535 S.E.2d 193

STATE of West Virginia ex rel. WEST VIRGINIA DEPARTMENT OF HEALTH AND HUMAN RESOURCES, BUREAU OF CHILD SUPPORT EN-FORCEMENT, and Virginia Ann Stump, Plaintiffs below, Appellees,

v.

Robert Lee GIBSON, Defendant below, Appellant.

No. 26903.

Supreme Court of Appeals of West Virginia.

Submitted April 18, 2000.

Decided July 11, 2000.

**596**

Susan Shelton Perry, Esq., Assistant General Counsel, Bureau for Child Support Enforcement, Charleston, West Virginia, Attorney for Appellees.

Susan D. Simmons, Esq., Elizabeth, West Virginia, Attorney for Appellant.

STARCHER, Justice:

In this paternity action appealed from the Circuit Court of Wood County, we are asked to examine whether a circuit court erred in its decision to attribute income to the child's father, or erred in its decision not to attribute income to the child's mother. As set forth below, we find no error and affirm the circuit court's decision.

## I.

### Facts & Background

The child at issue in this case, Tiffany J.,[1] was born March 22, 1989. At that time Tiffany's mother, appellee Virginia Ann Stump, was only 15 years old. Tiffany's father, appellant Robert Lee Gibson, was 25 years old and married to another woman. Tiffany was apparently born as a result of one act of sexual intercourse.

After Tiffany's 1989 birth until approximately 1992, appellant Gibson worked in West Virginia. In 1992, the appellant moved to Florida to find employment. While in Florida, the appellant contends that he suffered a severe leg injury that kept him from working. Then, in 1993, the appellant moved to McKeesport, Pennsylvania to strip motors and perform demolition work. The appellant has since acquired a skill in demolition work and is now fully employed.

On March 12, 1998, the Bureau of Child Support Enforcement filed the instant action on behalf of the appellee to determine paternity and establish child support against the appellant. Genetic testing of the appellant's blood indicated to a 99.8% probability that the appellant was Tiffany's father. After a hearing was held before a family law master, the circuit court entered an order on April 16, 1999, adjudicating the appellant as the father of Tiffany. Based upon the appellant's salary at that time, the order required the appellant to pay the appellee $428.00 per month as child support.

Additionally, the circuit court found that the appellant was required to reimburse the Department of Health and Human Resources for $7,839.00 in AFDC benefits paid for the child between 1993 and 1997; $1,510.36 for

---

1. Due to the sensitive nature of the facts involved in this appeal and our efforts to protect the privacy of the child involved, we adhere to our usual practice of utilizing the infant's last initials rather than her full surname. *See, e.g., In re Tiffany Marie S.*, 196 W.Va. 223, 226 n. 1, 470 S.E.2d 177, 180 n. 1 (1996).

medical expenses; and $261.00 for the cost of the paternity testing.

Lastly, the circuit court concluded that the appellant should be required to pay past, unpaid child support to the appellee. Because the appellant had worked sporadically, and did not have complete work or salary records, the circuit court attributed income to the appellant for several years of the child's life. Based upon a combination of attributed income and the appellant's tax returns, the circuit court ordered the appellant to pay to the appellee $14,263.05 in past child support.

The appellant now appeals the circuit court's April 16, 1999 order.

## II.

### Standard of Review

■ In this paternity proceeding, we are asked to review the findings and conclusions made by a circuit court as a result of hearings held by a family law master. When a circuit court adopts the family law master's recommendations we apply the three-pronged standard of review set forth in Syllabus Point 1 of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995):

In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged

standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

*In accord*, Syllabus Point 1, *Porter v. Bego*, 200 W.Va. 168, 488 S.E.2d 443 (1997). With this standard of review in mind, we examine the arguments raised by the appellant.

## III.

### Discussion

#### A.

### Attribution of Income to the Appellant

■ The appellant in this case does not directly dispute his future obligation to pay child support for Tiffany.[2] "When there has been a judicial determination of paternity, the paternal parent is required to support his child under *Code*, 48A-6-4 [1995]." Syllabus Point 2, *Porter v. Bego*, 200 W.Va. 168, 488 S.E.2d 443 (1997). Instead, the appellant challenges the mode used by the family law master and the circuit court in computing his past child support obligation. The appellant argues that the circuit court erred in attributing income to the appellant for the years 1990 to 1992,[3] when the appellant contends

---

**2.** The appellant does contend that he was not given an opportunity to challenge the genetic blood test results showing that, to a 99.8% probability, he was Tiffany's father. However, *Code*, 48A-6-3 (a)(4) [1997] requires that such objections to the results of any blood testing must be filed with the family law master, in writing, within 30 days of the filing of the test results. That statute states:

(4) When a party desires to challenge the results of the blood or tissue tests or the expert's analysis of inherited characteristics, he or she shall file a written protest with the family law master or circuit court or with the division of child support enforcement, if appropriate, within thirty days of the filing of such test results, and serve a copy of such protest upon the other party. The written protest shall be filed at least thirty days prior to any hearing involving the test results. The court or the child support enforcement division, upon reasonable request of a party, shall order that additional tests be made by the same laboratory or another laboratory within thirty days of the entry of the order, at the expense of the

party requesting additional testing. Costs shall be paid in advance of the testing. When the results of the blood or tissue tests or the expert's analysis which show, a statistical probability of paternity of more than ninety-eight percent are confirmed by the additional testing, then the results are admissible evidence which is clear and convincing evidence of paternity. The admission of the evidence creates a presumption that the man tested is the father.

We find no such written challenge or protest to the test results in the record, nor do we find any alternative test results or expert reports which might have called the initial test results into question. We find, therefore, that the appellant's objections to the test results were waived, and decline to address this issue.

**3.** The circuit court attributed income to the appellant, at minimum wage, for the period from 1990 to mid–1997. The circuit court attributed income from April 1, 1990 to March 31, 1991, at the federal minimum wage of $568.84 per

he was disabled and/or unable to be fully employed.

A circuit court begins its calculations of the amount of any child support obligation based upon both parents' gross income. "Gross income" means all earned and unearned income, *Code*, 48A–1A–19(a) [1999], and includes attributed income. *Code*, 48A–1A–19(b)(5) [1999].

■ Our seminal case on the definition of attributed income is *Porter v. Bego,* 200 W.Va. 168, 488 S.E.2d 443 (1997). After carefully examining the "Guidelines for Child Support" enacted by the Legislature, and examining the pre-Guidelines rules contained in the *Code of State Regulations,* we set forth the following definition in Syllabus Point 4:

"Attributed income" means income not actually earned by a parent, but which may be attributed to the parent because he or she is unemployed, is not working full time, is working below full earning capacity, or has non-performing or under-performing assets. *Code,* 48A–1A–3(a) [1997]. Attributed income consists of moneys which a support obligor should have earned had he or she diligently pursued reasonable employment opportunities, or reasonably utilized, applied, or invested his or her assets.

We determined in *Porter v. Bego* that a court or family law master may attribute income in those situations where a parent, who is obligated to pay support, voluntarily and without cause reduces his or her employment income. In such circumstances, the court or family law master may establish that parent's gross income at a level similar to his or her previous income, or at a minimum,

what the obligor could earn working 40 hours per week at the federal minimum wage. 200 W.Va. at 175, 488 S.E.2d at 450. Additionally, "[i]f, for reasons within their control, the obligated parent fails to reasonably use his or her assets (other than the parent's primary residence) in a manner so that the assets are likely to produce an average or reasonable economic return, then the court or family law master may attribute reasonable investment income for the asset." *Id.*

■ *Code,* 48A–1A–3(b) [1997] sets out the three-part test that a court or family law master must consider in deciding whether to attribute employment income:

(b) If an obligor: (1) Voluntarily leaves employment or voluntarily alters his or her pattern of employment so as to be unemployed, underemployed or employed below full earning capacity; (2) is able to work and is available for full-time work for which he or she is fitted by prior training or experience; and (3) is not seeking employment in the manner that a reasonably prudent person in his or her circumstances would do, then an alternative method for the court or master to determine gross income is to attribute to the person an earning capacity based on his or her previous income. If the obligor's work history, qualifications, education or physical or mental condition cannot be determined, or if there is an inadequate record of the obligor's previous income, the court or master may, as a minimum, base attributed income on full-time employment (at forty hours per week) at the federal minimum wage in effect at the time the support obligation is established.[4]

month; from April 1, 1991, until September 30, 1996, at $629.17 per month; and from October 1, 1996 until June 30, 1997, at $696.21. Since July 1, 1997, the appellant's child support obligation was calculated based upon the income shares formula enacted by the Legislature.

We note that after 1993, the appellant's tax records indicate that he was gainfully employed doing demolition work at a wage substantially above minimum wage. It therefore appears that the appellant received a huge "break" in his child support obligation when the family law master attributed only minimum wage income for the period from 1993 to 1997.

4. This standard is similar to that found in the *Code of State Rules,* which was applied to cases adjudicated prior to the Legislature's enactment of the Guidelines for Child Support in 1997. 78 *C.S.R.* § 16 states, in part:

4.1.2. If a court or master determines that a limitation on income is not justified in that it is a result of a self-induced decline in income, a refusal to occupy time profitably, or an unwillingness to accept employment and earn an adequate sum, the court or master may consider evidence establishing the support obligor's earning capacity in the local job market, and may attribute income to such obligor.

Accordingly, a family law master or circuit court may attribute income to a parent when there is evidence that the parent has, without a justifiable reason, voluntarily acted to reduce his or her income. In such circumstances, a family law master or circuit court should attribute income based upon the parent's past earning history or earning capacity. However, if the parent's past earning history or capacity cannot be determined, then the family law master or circuit court may, at a minimum, attribute income at the federal minimum wage level. "However, once that parent demonstrates they are diligently seeking employment as would a reasonable, prudent person, *Code*, 48A–1A–3 [1997] permits the law master or court to reconsider whether to attribute income to the parent." *Porter v. Bego*, 200 W.Va. at 176, 488 S.E.2d at 451.

We made absolutely clear in *Porter v. Bego* that "[w]hether a parent has reduced their income 'without cause' is necessarily a fact-based determination that will change on a case-by-case basis." [5] We therefore examine the facts presented below to determine whether the circuit court was clearly wrong in attributing income to the appellant.

The appellant argues here, and argued below, that he has only a 9th grade education, and only 5th grade reading skills due to a learning disability. Until the appellant was employed doing demolition work in 1993, he contends that his educational level, learning disability, and poor market conditions limited his ability to find any employment. Additionally, the appellant argues that he moved to Florida in 1992 shortly before much of that state, and its economy, was devastated by Hurricane Andrew. Lastly, he states that during 1992, he suffered a broken femur that took 8 months to mend.

The appellant argues that, when these facts are considered as a whole, it was improper for the circuit court to attribute income for the period between 1990 and 1993.[6] However, after carefully combing through the evidence presented to the family law master, we cannot conclude that the circuit court erred. For the disputed period of time, the appellant did not produce any medical records or disability determinations from any agencies to show that he was unable to seek work. Furthermore, even assuming the appellant's broken leg did cause a temporary total disability, that disability did not extend over the entire 3–year period. More importantly, the appellant failed to offer any testimony, evidence or records [7] to indicate that

4.1.3. As an alternative to the method of determining attributed income provided for in subdivision 4.1.2, where a support obligor is remarried and is unemployed, underemployed or is otherwise working below full earning capacity, the court or master may attribute income to the support obligor in an amount not to exceed that which could be derived by the obligor from full-time employment at the current minimum wage.

5. In *Porter v. Bego*, 200 W.Va. at 176, 488 S.E.2d at 451 (footnotes omitted), we set out several fact patterns where it might be inequitable to attribute income to a parent:

We can foresee reasonable reasons for a parent to voluntarily reduce his or her income with cause. For instance, a parent may decide not to work 30 hours of overtime a week in order to spend more time with the child, or an aging parent may accept an early retirement package from an employer when there is a possibility his or her job may be eliminated in a future "reduction in force." *Code*, 48A–1A–3(c) [1997] lists other specific instances where income may not be attributed and which may be instructive, such as to provide care to a child of preschool age or a handicapped child, or to pursue education, self-employment, or some

other plan of self-improvement. Essentially, a family law master or court should examine what a reasonable, similarly-situated parent would have done had the family remained intact or, in cases involving a nonmarital birth, what the parent would have done had a household been formed.

6. We are unclear as to the dates for which the appellant seeks relief. The record indicates that the appellant had sporadic employment in West Virginia in 1990 and 1991, and had some employment in Florida in 1992. The circuit court awarded reimbursement child support based upon attributed income beginning on April 1, 1990 to September 30, 1996. The appellant argues there "should have been only such attribution from 1993 to 1996" which "would in itself alleviate three years of calculated reimbursement support."

Because of our resolution of this issue against the appellant, we do not endeavor to guess the specific dates when income should not have been attributed to the appellant.

7. The appellant did not testify before the family law master. Instead, counsel for the appellant proffered to the family law master a summary of

he had unsuccessfully tried to secure some type of employment during that 3–year period, or that because of his education, physical and/or mental condition, he was wholly prevented from being employed.

We therefore affirm the circuit court's decision to attribute income to the appellant for the years 1990 to 1993.

## B.

### Attributed Income to the Appellee

■ The other argument raised by the appellant which we choose to address is that the circuit court should, in some manner, have attributed income to the appellee. The appellant points out that his daughter, Tiffany, is now 11 years old and no longer of preschool age. Because of her age, the appellant argues that the appellee could leave Tiffany at home or in school and earn an income. In other words, the appellant argues that the appellee "is unemployed, is not working full time, [or] is working below full earning capacity" as defined in Syllabus Point 4 of *Porter v. Bego, supra*—and therefore, the circuit court should have attributed income to the appellee.

The appellant concedes that the appellee is currently raising two young children other than Tiffany, children who were fathered by individuals other than the appellant. At the time of the hearing before the family law master, these children were 2 years old and 9 months old.

■ *Code,* 48A–1A–3(c)(1) specifically addresses certain situations where a parent chooses to avoid employment in the wage-paying workforce in order to work full-time in the home raising children. The statute states:

(c) Income shall not be attributed to an obligor who is unemployed or underemployed or is otherwise working below full earning capacity if any of the following conditions exist:

(1) The parent is providing care required by the children to whom the parties owe a joint legal responsibility for support, and such children are of preschool age or

what she believed the appellant's testimony

are handicapped or otherwise in a situation requiring particular care by the parent;
. . . .

It is therefore clear that *Code,* 48A–1A–3(c)(1) prohibits a family law master or a circuit court from attributing income to a parent who is providing care required by the children to whom the parties owe a joint legal responsibility for support when those children are of preschool age, are handicapped or otherwise in a situation requiring particular care by the parent.

The appellant argues that because he owes no legal responsibility to support these other pre-school-aged children, they cannot be considered by a court in determining whether to attribute income to the appellee. We agree with the appellant that *Code,* 48A–1A–3(c)(1) is not controlling in this case, because the appellee is not "providing care required by the children *to whom the parties owe a joint legal responsibility for support* [.]" (Emphasis added.) However, our analysis does not end there.

■ We stated in *Porter v. Bego* that a circuit court should attribute income only when a parent "voluntarily, and without cause, reduces his or her employment income[.]" 200 W.Va. at 175, 488 S.E.2d at 450. "Whether a parent has reduced their income 'without cause' is necessarily a fact-based determination that will change on a case-by-case basis." 200 W.Va. at 176, 488 S.E.2d at 451. The test to be used in determining whether a parent reduced their income "without cause" is this:

Essentially, a family law master or court should examine what a reasonable, similarly-situated parent would have done had the family remained intact or, in cases involving a non-marital birth, what the parent would have done had a household been formed.

*Id.* The Guidelines established by the Legislature are not intended to "impose an impossible requirement." 200 W.Va. at 177, 488 S.E.2d at 452. The Legislature merely "recogniz[ed] that children have a right to share in their natural parents' level of living. . . . [T]he guidelines are structured so as to provide . . . that child support will be related, to the extent practicable, to the level of living

would be.

that children would enjoy if they were living in a household with both parents present." *Code,* 48A–1B–1(b) [1996].

▆▆▆▆ It is clear then, from a reading of *Code,* 48A–1A–3, that a family law master or circuit court may not attribute income to a parent who is unemployed or under-employed because the parent has chosen to devote time to care for children (including those who are above pre-school age or those to whom the parties do not owe a joint legal responsibility for support) under circumstances in which a reasonable, similarly-situated parent would have devoted time to care for the children had the family remained intact or, in cases involving a non-marital birth, had a household been formed. When a family law master or a circuit court, in the exercise of discretion, chooses to attribute income to a parent who is providing care to children, there must be a full explanation on the record why it is in the best interests of the children that the parent be employed rather than providing care to the children.

In examining the situation presented by this case, we do not believe that the circuit court erred in refusing to attribute income to the appellee. A reasonable, similarly situated parent with a 9–month–old child, a 2–year–old child, and (at the time of the hearing) a 9–year–old child could reasonably conclude that it was in the children's best interest to stay home. This is particularly the case because, had the parties formed a household, on the limited income of the parties it would have been difficult to impossible for the parties to afford to pay for day care and other child care expenses for the children.

We therefore affirm the circuit court's refusal to attribute income to the appellee.[8]

## IV.

### *Conclusion*

For the reasons set forth above, we affirm the circuit court's order of April 16, 1999.

Affirmed.

---

8. We decline to address the other issues raised by the appellant.