557 S.E.2d 267

**STATE of West Virginia ex rel. DEPARTMENT OF HEALTH AND HUMAN RESOURCES, CHILD SUPPORT ENFORCEMENT DIVISION, and Denise Jarvis Hannan, Plaintiff Below, Appellees,**

v.

**Jeffrey L. BAKER, Defendant Below, Appellant.**

**No. 29775.**

Supreme Court of Appeals of West Virginia.

Submitted Nov. 7, 2001.

Decided Nov. 28, 2001.

Kim Farha, Charleston, for Appellee, West Virginia Department of Health and Human Resources, Child Support Enforcement Division.

Boyce A. Griffith, Hamlin, for the Appellant.

ALBRIGHT, Justice.

Jeffrey Lynn Baker appeals from the February 26, 2001, order of the Circuit Court of Kanawha County, which directed him to pay past and current child support to Appellee, Denise Jarvis Hannan. Appellant asserts error with regard to the lower court's decision that income realized in connection with the exercise of certain stock options was "gross income"[1] and with the attribution of income to him at the annual rate of $40,000. Upon our review of these issues, we determine that the lower court did not err by including income realized from the exercise of certain stock options in calculating child support, but that the circuit court did error with regard to the issue of attributed income. Accordingly,

we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

### I. Factual and Procedural Background

The Department of Health and Human Resources ("DHHR"), through its child support enforcement division, filed an action in the circuit court, seeking both a determination of paternity and child support. As a result of blood testing, Appellant[2] was adjudicated the father of Andrew J.D.,[3] who was born on August 19, 1995. The parties agreed that Appellant's child support obligation would be retroactive to January 1, 1997.

A hearing before the family law master was held on August 28, 2000, for the purpose of taking testimony from the parties relevant to the issue of child support. During the hearing, Appellant was questioned about the fact that he had just lost his employment with the McDonald's Corporation, with whom he had been employed for sixteen years. While Appellant indicated at the hearing that he was in the process of challenging his termination, he was apparently terminated for utilizing company employees to perform personal tasks.

In calculating the income available for the determination of back-owed child support, the family law master included income that resulted through Appellant's exercise of certain stock options. For the years 1998 and 1999, the family law master included as "gross income" to Appellant earnings that he received from the exercise of stock options he owned in McDonald's corporate stock for those respective years. For purposes of calculating Appellant's current child support obligation, the family law master attributed income of $40,000 per year to Appellant, although Appellant was unemployed at the time of the ruling. Through its order of February 26, 2001, the circuit court adopted the recommendations of the family law master. With regard to that ruling, Appellant challenges both the inclusion of the stock option earnings in calculating his past child

1. See W.Va.Code § 48A–1A–19 (1999).

2. Appellant and Appellee are not married.

3. As is our practice in sensitive domestic matters, we use initials to identify certain individuals. See In re Jonathan P., 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

support obligation and the attribution of income in calculating his current child support obligation.

## II. Standard of Review

■ In syllabus point one of *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995), we announced the standard under which we review circuit court orders that involve the adoption of findings by a family law master:

> In reviewing challenges to findings made by a family law master that were also adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Because the issues raised in this appeal involve either questions of law or statutory interpretation, our review is *de novo*.

## III. Discussion

### A. Stock Option Exercise

Appellant realized $86,778 in connection with the exercise of stock options for 1998 and $47,620.58 for 1999. These amounts reflect the gross amounts of the moneys realized through the exercise of such stock options. Appellant was required to pay income tax on these funds, and, as evidenced by his tax returns for these respective years, he did pay taxes on the capital gains he realized through the exercise of the stock options. Appellant urges this Court to view the moneys received through the exercise of the stock options as outside the definition of "gross income" and, therefore, beyond the reach of the child support formula. *See* W. Va.Code § 48A–1A–19(a) (1999).

As with any issue of statutory interpretation, we look to the relevant and controlling language.[4] Under West Virginia Code

§ 48A–1A–19(a), "gross income" is defined to mean both "earned and unearned income." It is further defined to include, "[e]arnings in the form of salaries, wages, commissions, fees, bonuses, profit sharing, tips and other income." W.Va.Code § 48A–1A–19(b)(1). And, "[d]epending on the circumstances of the particular case," capital gains may also be viewed as "gross income." W.Va.Code § 48A–1A–19(c). While there are statutorily provided exceptions to the definition of "gross income," none of those exceptions applies to the facts of this case. *See* W.Va. Code § 48A–1A–19(d).

■ Appellant's argument that the stock option funds should not be viewed as income is predicated on a theory that whether funds qualify as "gross income" is dependent on whether they constitute recurrent income or whether the income is nonrecurrent in nature. Claiming that the funds he realized from the stock options were nonrecurring, Appellant urges this Court to look beyond the statutory definition of "gross income" and find error in the lower court's inclusion of such funds in the child support calculations.

While we appreciate the argument advanced by Appellant, we simply have no basis in the law for viewing the stock option income as beyond the reach of child support. *See* W.Va.Code § 48A–1B–2 (1997) (Repl.Vol. 1999) (discussing how child support calculation is reached); *cf. Yost v. Unanue*, 109 Ohio App.3d 294, 671 N.E.2d 1374, 1376 (1996) (referencing statutory definition of "nonrecurring" income in affirming lower court's decision not to modify child support since parties were aware of stock option income at time of divorce). Contrary to Appellant's representation that the determining factor concerning whether moneys realized from stock option exercise is income is whether it is a one-time realization of income, the authority upon which Appellant relies stands *only* for the proposition that stock options, when exercised, are properly treated

4. Due to repeal and recodification, the statutes under consideration here are now located in chapter 48, rather than chapter 48A. Because the former statutes were utilized to reach the decision at issue in this case, we cite to the language in chapter 48A. We note, however, that the pertinent recodified statutory language is essentially the same language as that under consideration. *See* W.Va.Code § 48–1–228 (2001) (defining "gross income").

as income for child support purposes, barring some statutory exclusion. *See, e.g., In re Marriage of Kerr,* 77 Cal.App.4th 87, 91 Cal. Rptr.2d 374, 380 (1999) (treating exercise of stock option as income); *In re Marriage of Campbell,* 905 P.2d 19, 20 (Colo.Ct.App.1995) (holding that exercise of stock option is ordinary income for purposes of child support); *Kenton v. Kenton,* 571 A.2d 778, 782–83 (Del. 1990) (analogizing stock option income to bonus and viewing same as income); *Yost,* 671 N.E.2d at 1376 (identifying statutory definition of "nonrecurring" income under Ohio law).

■ Finding no basis for excluding stock option income, we find that income realized through the exercise of a stock option falls within the definition of "gross income" set forth in chapter 48A, now chapter 48, of the West Virginia Code. *See* W.Va.Code §§ 48A–1A–19; 48–1–228. Accordingly, we hold that the lower court was correct in including the income realized by Appellant through his stock option exercises in 1998 and 1999 as "gross income" for child support purposes. With regard to future cases involving stock option income, we encourage the parties to promptly introduce evidence of such income to avoid the need for modification proceedings.

## B. Attribution of Income

■ We discussed the concept of attributed income in syllabus point four of *Porter v. Bego,* 200 W.Va. 168, 488 S.E.2d 443 (1997):

"Attributed income" means income not actually earned by a parent, but which may be attributed to the parent because he or she is unemployed, is not working full time, is working below full earning capacity, or has non-performing or under-performing assets. *W.Va.Code,* 48A–1A–3(a) [1997]. Attributed income consists of moneys which a support obligor should have earned had he or she diligently pursued reasonable employment opportunities, or

reasonably utilized, applied, or invested his or her assets.

We explained in syllabus point four of *State ex rel. W.Va. DHHR v. Gibson,* 207 W.Va. 594, 535 S.E.2d 193 (2000), that "[a] family law master or circuit court may attribute income to a parent when there is evidence that the parent has, without a justifiable reason, voluntarily acted to reduce his or her income." *Id.* at 595, 535 S.E.2d at 194, syl. pt. 4, in part.

The issue of attributed income is entirely a legislative creation. Under West Virginia Code § 48A–1A–3 (1997) (Repl.Vol.1999),[5] attribution of income is expressly permitted based on an obligor's *prior level of income* when the individual:

(1) Voluntarily leaves employment or voluntarily alters his or her pattern of employment so as to be unemployed, underemployed or employed below full earning capacity; (2) is able to work and is available for full-time work for which he or she is fitted by prior training or experience; and (3) is not seeking employment in the manner that a reasonably prudent person in his or her circumstances would do[.]

W.Va.Code 48A–1A–3(b). In setting the level of attributed income in this case for purposes of current child support, the trial court viewed Appellant's involuntary termination as the legal equivalent of a voluntary act, apparently based on its conclusion that Appellant's actions underlying the dismissal involved intentional misconduct.

■ As tempting as it may have been to the family law master and the lower court to come within the provisions of section 3(b), we cannot view an involuntary dismissal, barring some evidence that the dismissal was effectuated for the express purpose of avoiding or affecting child support, as a statutory parallel to the actions specified in section 3(b)(1).[6] *See* W.Va.Code § 48A–1A–3(b)(1). That provision anticipates voluntary action; in this case, the events with regard to the dismissal of Appellant appear without question to be involuntary. Accordingly, we hold that ab-

---

5. In chapter 48, attributed income is provided for in article 1, section 205. *See* W.Va.Code § 48–1–205 (2001).

6. It is for the Legislature, and not this Court, to establish the parameters for attributed income.

sent a showing that a child support obligor effectuated a dismissal from his/her place of employment for the express purpose of avoiding or affecting child support payments, an involuntary termination, including those that are for cause and which involve intentional conduct, does not come within the statutory purview of voluntary action required to invoke the specific provisions of West Virginia Code § 48A–1A–3(b) concerning attribution of income based on an obligor's prior level of income. In this case, the lower court clearly erred in attributing income at the level of $40,000 [7] because the necessary statutory elements for relying on Appellant's prior level of income were not established. *See id.*

### C. Remand

This Court was apprised during oral argument of this case that Appellant is now employed. Accordingly, there is no longer a need on remand to rely on attributed income for the purpose of current child support. In recalculating the amount of child support owed from the period of November 1, 2000,[8] to the date of Appellant's current employment, the lower court may take into consideration the statutory provision which permits the federal minimum wage to be utilized for purposes of attributed income [9] when "the obligor's work history, qualifications, education or physical or mental condition cannot be determined, or if there is an inadequate record of the obligor's previous income." W.Va.Code § 48A–1A–3(b).

Although the parties have not suggested that any error was made in calculating the amount of child support that Appellant owes for the years 1998 and 1999 beyond the inclusion of the income realized through the exercise of the stock options in those respective years, we authorize the lower court to revisit those child support calculations for the express purpose of determining whether

Appellant made any additional income in the nature of investment income upon his receipt of those stock option funds in those years or in subsequent years. In such event, those funds realized as a direct result of the stock option income would properly be considered as income under the definition of "gross income" set forth in West Virginia Code § 48A–1A–19.

Based on the foregoing, the decision of the Circuit Court of Kanawha County is affirmed as to the inclusion of stock option income in the calculation of "gross income" for child support purposes; reversed as to the attribution of income based on Appellant's former income; and this matter is remanded for further proceedings consistent with this opinion.

Affirmed in part; Reversed in part; and Remanded with Directions.

---

7. This figure, while somewhat less than that earned by Appellant over the relevant years under consideration, was nonetheless tied to Appellant's prior income at McDonald's.

8. This was the date established by the lower court for the onset of the current child support obligation.

9. To be clear, we are not finding that the lower court erred in its decision to attribute income to Appellant; only that the court erred in setting the amount of the attributed income based on his past income.