575 S.E.2d 633

**In re the Marriage of Victoria Dawn JOSIMOVICH, Petitioner Below, Appellant**

v.

**Peter Wright JOSIMOVICH, Respondent Below, Appellee**

No. 30465.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 8, 2002.

Decided Dec. 3, 2002.

Ward D. Stone, Jr., Esq., Spilman, Thomas & Battle, Morgantown, for Appellant.

Delby B. Pool, Esq., Clarksburg, for Appellee.

## PER CURIAM.

The appellant Victoria Howes, formerly Victoria Josimovich, appeals from a Randolph County Circuit Court's divorce order that adopted a family law master's recommendations. We reverse and remand on the issues of equitable distribution, alimony, and attorney's fees and costs.

### I.

Victoria Howes and the appellee Peter Josimovich were married in West Virginia on July 30, 1988. The appellant, then Victoria Josimovich, graduated from Davis & Elkins College in 1991 with degrees in nursing and health care administration. After graduating from college, she held various jobs, including working as a registered nurse. Mr. Josimovich attended the School of Osteopathic Medicine in Greenbrier County and graduated in 1994. The couple lived for a year in New York and then three years in Ohio while the appellee completed his medical residency. During his medical residency, the appellee received a salary and provided most of the economic support for the family. Two children were born of the marriage; one girl was born in April of 1992 and another in February of 1994. After Dr. Josimovich completed his medical residency, the couple returned to West Virginia in 1998.

The appellant's work history after Dr. Josimovich graduated from medical school was limited. In February of 1994, she stopped working outside the home following the birth of their second child.[1] The parties separated when Dr. Josimovich left the marital residence in August of 1999. The appellant filed for divorce in March 2000. During the last three years of their marriage, Dr. Josimovich had an annual income of $149,569.00 in 1998, $195,679.00 in 1999, and $199,943.00 in 2000.

After the appellant filed the divorce action, the parties attended mediation and agreed to a parenting plan. On May 31, 2001, the family law master ("FLM")[2] held a final hearing on the divorce action and on June 27, 2001, the FLM issued a recommended order.[3]

The recommended order found that the appellee's average monthly income was $14,719.00, and the FLM attributed monthly income to the appellant in the amount of $2,278.50. The FLM recommended that the appellee pay monthly child support of $1,523.88. Because the parties had accumulated more debts than assets, each party was allocated a total net deficit of $10,860.47, and each was ordered to pay one-half of this marital debt. The FLM further recommended that the appellee pay $2,900.00 per month in alimony for one year, and that the appellee pay one-half of the appellant's attorney's fees and costs accumulated through the hearing completed on May 31, 2001.

On August 29, 2001, the circuit court entered an order adopting the FLM's recommended order. The circuit court's order granted the parties a divorce on the grounds of irreconcilable differences and confirmed the FLM's other recommendations. The appellant appeals to this Court from the circuit court's order.

### II.

This Court has previously stated a three-pronged standard for reviewing the

---

1. After February 1994, the appellant did not work outside the home again except as a part-time instructor for the National Institute of Technology between August 1996 and March 1997.

2. Effective January 1, 2002, family law masters were replaced by family court judges. *See West*

*Virginia Constitution*, Article VIII, § 16; *W.Va. Code*, 51–2A–1 to –23 [2001].

3. The parenting plan was incorporated by the FLM into his recommended order and approved by the circuit court.

findings of family law masters adopted by circuit courts.

In reviewing challenges to findings made by a family law master that also were adopted by a circuit court, a three-pronged standard of review is applied. Under these circumstances, a final equitable distribution order is reviewed under an abuse of discretion standard; the underlying factual findings are reviewed under a clearly erroneous standard; and questions of law and statutory interpretations are subject to a *de novo* review.

Syllabus Point 1, *Burnside v. Burnside*, 194 W.Va. 263, 460 S.E.2d 264 (1995).

■■■ The appellant petitions this Court, arguing that the circuit court and the FLM erred in attributing income to her, and because of that error, further erred in calculating the award of child support and alimony.

A family law master or circuit court may not attribute income to a parent who is unemployed or under-employed because the parent has chosen to devote time to care for children (including those who are above pre-school age or those to whom the parties do not owe a joint legal responsibility for support) under circumstances in which a reasonable, similarly-situated parent would have devoted time to care for the children had the family remained intact or, in cases involving a non-marital birth, had a household been formed.

Syllabus Point 6, *State of West Virginia ex rel. West Virginia Department of Health and Human Resources, Bureau of Child Support Enforcement v. Gibson*, 207 W.Va. 594, 535 S.E.2d 193 (2000).

■■■ This Court said further in Syllabus Point 7 of *Gibson* that:

When a family law master or a circuit court, in the exercise of discretion, chooses to attribute income to a parent who is providing care to children, there must be a full explanation on the record why it is in the best interests of the children that the parent be employed rather than providing care to the children.

The FLM attributed income of $2,278.00 per month to the appellant. In attributing income to her, the FLM relied on the testimony of the director of personnel at a local hospital as to what a registered nurse could earn. As the spouse of a medical doctor earning more than $14,000.00 per month, a reasonable, similarly-situated spouse would likely have remained in the home and devoted her time to the care of the children. Further, there is testimony that the parties had planned for the appellant to stay at home and care for their children once the appellee had become a physician. The appellant had not worked outside the home on a full-time basis since early 1994.

In attributing income to the appellant, the FLM did not explain why it was in the best interests of the children for the appellant to return to work; the FLM, thereby, ran afoul of the mandate in Syllabus Point 7 of *Gibson* requiring a FLM to "provide a full explanation on the record why it is in the best interests of the children that the parent be employed rather than providing care to the children." Therefore, based on a review of the record, we conclude that the FLM and the circuit court erred in attributing income to the appellant. We further find that because the circuit court erred in adopting the FLM's recommendation attributing income to the appellant, it also erred in calculating child support and alimony.[4]

■■■ The appellant further alleges that the circuit court erred in not awarding her permanent alimony. *W.Va.Code*, 48-2-16(b) [1999] lists twenty factors that family law masters must consider in calculating alimony awards.[5] Although *W.Va.Code*, 48-2-16

---

4. During oral arguments, this Court was advised that the appellant is now employed. Accordingly, there is no longer a need on remand to rely on attributed income for the purpose of calculating alimony or child support. On remand, in recalculating the amount of additional child support and alimony owed, the lower court is directed to follow the guidance provided in *Gibson* in calculating child support and alimony for the period

that the appellant was unemployed and to use her actual earnings in calculating future alimony and child support awards.

5. The twenty factors listed in *W.Va.Code*, 48-2-16 [1999] are:

(1) The length of time the parties were married;

[1999] lists twenty factors, a family law master needs only to make specific findings for those factors that are applicable to the case at hand. *Burnside v. Burnside,* 194 W.Va. 263, 275, fn. 30, 460 S.E.2d 264, 276, fn. 30 (1995). "An award of alimony by its very nature, as well as by the guidelines established by the Legislature, does entail the examination of various financial questions. As has been indicated above, one of those factors is the income-earning ability of the parties. *W.Va.Code,* 48–2–16(b)(4)." *Driver v. Driver,* 208 W.Va. 686, 689, 542 S.E.2d 849, 852 (2000) (*per curiam*).

The income earning abilities of the parties in the instant case are quite disparate. The appellee earned approximately $14,000.00 a month when the FLM attributed the appellant approximately $2,300.00 a month. Having considered the factors listed in *W.Va. Code,* 48–2–16(b) [1999], this Court finds that the FLM, in its recommendation, and the circuit court abused their discretion in not awarding the appellant permanent alimony in the amount of at least $2,900.00 per month.

We therefore reverse the circuit court's order and direct the lower court to consider the factors discussed in *W.Va.Code,* 48–2–16(b) [1999], and to award the appellant at least $2,900.00 in permanent alimony retroactive to May 1, 2002, the date she received the last payment of temporary alimony.

 Finally, the appellant asserts that the circuit court erred in requiring the appellee to pay only one-half of the appellant's attorney's fees and costs through the May 31, 2001 hearing. Pursuant to *W.Va.Code,* 48–2–13(a)(6)(A) [1993],[6] a court may compel either party to pay the other party's attorney's fees and court costs, and, if an appeal is taken, the court can further award the payment of appeal fees and costs.

In divorce actions, an award of attorney's fees rests initially within the sound discretion of the family law master and should not be disturbed on appeal absent an abuse of discretion. In determining whether to award attorney's fees, the family law master should consider a wide array

(2) The period of time during the marriage when the parties actually lived together as husband and wife;

(3) The present employment income and other recurring earnings of each party from any source;

(4) The income-earning abilities of each of the parties...;

(5) The distribution of marital property to be made under the terms of a separation agreement or by the court under the provisions of section thirty-two [§ 48–2–23] of this article, insofar as the distribution affects or will affect the earnings of the parties and their ability to pay or their need to receive alimony, child support or separate maintenance[;]

(6) The ages and the physical, mental and emotional condition of each party;

(7) The educational qualifications of each party;

(8) Whether either party has foregone or postponed economic, education or employment opportunities during the course of the marriage;

(9) The standard of living established during the marriage;

(10) The likelihood that the party seeking alimony, child support or separate maintenance can substantially increase his or her income-earning abilities within a reasonable time by acquiring additional education or training;

(11) Any financial or other contribution made by either party to the education, training,

vocational skills, career or earning capacity of the other party;

(12) The anticipated expense of obtaining the education and training described in subdivision (10) above;

(13) The costs of educating minor children;

(14) The costs of providing health care for each of the parties and their minor children;

(15) The tax consequences to each party;

(16) The extent to which it would be inappropriate for a party, because said party will be the custodian of a minor child or children, to seek employment outside the home;

(17) The financial need of each party;

(18) The legal obligations of each party to support himself or herself and to support any other person;

(19) Costs and care associated with a minor or adult child's physical or mental disabilities; and

(20) Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable grant of alimony, child support or separate maintenance.

6. *W.Va.Code,* 48–2–13(a)(6)(A) [1993] provides in pertinent part:

The court may compel either party to pay attorney's fees and court costs reasonably necessary to enable the other party to prosecute or defend the action in the trial court.... If an appeal be taken or an intention to appeal be stated, the court may further order either party to pay attorney fees and costs on appeal.

of factors including the party's ability to pay his or her own fee, the beneficial results obtained by the attorney, the parties' respective financial conditions, the effect of the attorney's fees on each party's standard of living, the degree of fault of either party making the divorce action necessary, and the reasonableness of the attorney's fee request.

Syllabus Point 4, *Banker v. Banker*, 196 W.Va. 535, 474 S.E.2d 465 (1996).

Given the unequal incomes of the parties, their potential earning power, and the lack of assets awarded from the equitable distribution, we find that the circuit court abused its discretion in not ordering the appellee to pay all of the marital debts, the appellant's reasonable attorney's fees and costs, including the attorney's fees and cost for the appeal to this Court.

### III.

For all of the above reasons, this matter is reversed and we remand to the family court for entry of an order awarding the appellant permanent alimony in the amount of at least $2,900.00 per month retroactively to June, 2002; a recalculation of child support based on *Gibson, supra;* and to order the appellee to pay all of the marital debts and the appellant's reasonable attorney's fees, including her attorney's fees for this appeal, and costs.

Reversed.

Justice MAYNARD dissents and reserves the right to file a dissenting opinion.

MAYNARD, Justice, dissenting.

I respectfully dissent from the majority opinion because it is obvious the majority considered only one factor in reversing the order of the circuit court, the income of Dr. Josimovich, and ignored the remaining factors that are enumerated in W.Va.Code § 48–2–16 (1999).

The majority states that "[t]he earning abilities of the parties ... are quite disparate[,]" but then refuses to consider the earning ability of Ms. Howes. The majority ignores the fact that Ms. Howes graduated with two degrees, a B.S. in nursing and a B.S. in Health Care Administration. The Human Resources Employment Specialist at the local hospital testified that job openings exist in the immediate area that Ms. Howes is qualified to fill. Her minimum wage would be $14.00 per hour if she chose to go to work. The majority ignores the fact that Dr. Josimovich put his education on hold so Ms. Howes could complete her education first. The majority ignores the fact that the financial history of the parties is debt-ridden, and they declared bankruptcy in 1999. Both parties were responsible for accumulating the remaining debt, and both should be responsible for retiring the debt.

The majority ignores the figures used in Ms. Howes' financial disclosures. In her first disclosure, she listed monthly expenses of $5,608.86. Ms. Howes amended the disclosure on March 14, 2001, showing that her monthly expenses increased to $6,680.63. Six days later, on March 20, 2001, she filed a second revised disclosure, maintaining that her monthly expenses had escalated to $12,112.22. If Ms. Howes wishes to further her education so that she might increase her earning ability to support her lifestyle, I would not be averse to awarding rehabilitative alimony. However, I believe permanent alimony should not be awarded when Ms. Howes is a young, healthy, educated woman with job opportunities imminently available. The factors enumerated in W.Va.Code § 48–2–16 (1999) dictate against awarding permanent alimony under the circumstances of this case.

As justification for refusing to attribute income to Ms. Howes, the majority states, "As the spouse of a medical doctor earning more than $14,000.00 per month, a reasonable, similarly-situated spouse would likely have remained in the home and devoted her time to the care of the children." Quite frankly, I believe many working women will be offended by the majority's "reasonable, similarly-situated spouse" standard. If this opinion had been written in 1945, the standard used by the majority would probably be right on track. However, this is 2002, nearly 2003, and the fact is that millions of American women married to professional men, doctors, lawyers, corporate presidents, etc., want

and choose to use their talents, skills, and education in the workplace. The fact that a woman has children no longer dictates that she remain in the home devoting her time to the care of the children. Many women believe that their children receive superior care due to the fact that they work outside the home.

Rather than seeking employment, Ms. Howes sought to bolster her stay-at-home position by pulling the younger child out of school on a half-day basis for home schooling while Natalie was attending first grade in public school. I cannot tell if this plan was ever implemented or how long it may have lasted. The fact is that both girls are school age, ten and eight, and the evidence indicates that both perform well in public school. Moreover, Ms. Howes would have this Court believe that her four-day hospitalization for "partner relational problem" fourteen months after the marital separation prohibits her from working. The evidence does not indicate as much. Therefore, I do not believe the circuit court abused its discretion by attributing monthly income to Ms. Howes.

If Ms. Howes is to receive $2,900.00 for alimony in addition to child support from her ex-husband every month, then surely she can afford to pay one-half of her attorney's fees. But no, here again the majority places the full responsibility on Dr. Josimovich. Lastly, in her petition for appeal to this Court, Ms. Howes does not request a recalculation of child support. Nonetheless, in its plethora of relief, with no explanation whatsoever, the majority opinion orders a recalculation.

I do not believe the circuit court erred in the relief that it granted to Ms. Howes in the final divorce order. Therefore, I would affirm the order of the Circuit Court of Randolph County which was entered on August 29, 2001.