IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2013 Term

_____

No. 11-1270

_____

**FILED**

April 19, 2013
released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

MELINDA H.,
Respondent Below, Petitioner

v.

WILLIAM R., II,
Petitioner Below, Respondent

_____

Appeal from the Circuit Court of Tyler County
The Honorable David W. Hummel, Jr., Judge
Civil Action No. 02-D-53

REVERSED AND REMANDED WITH DIRECTIONS
_____

Submitted: February 5, 2013
Filed: April 19, 2013

Brent Wolfingbarger, Esq.                    David C. White, Esq.
Pleasants Law Firm, PLLC                     Law Office of Neiswonger and White
Washington, D.C.                             Moundsville, West Virginia
Attorney for the Petitioner                  Attorney for the Respondent

CHIEF JUSTICE BENJAMIN delivered the Opinion of the Court.

SYLLABUS BY THE COURT

1.    "In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

2.    "'Attributed income' means income not actually earned by a parent, but which may be attributed to the parent because he or she is unemployed, is not working full time, is working below full earning capacity, or has non-performing or under-performing assets. [W Va. Code § 48-1-205 (2008)]. Attributed income consists of moneys which a support obligor should have earned had he or she diligently pursued reasonable employment opportunities, or reasonably utilized, applied, or invested his or her assets." Syl. pt. 4, *Porter v. Bego*, 200 W. Va. 168, 488 S.E.2d 443 (1997).

3.    For the purpose of determining child support, either not attributing income or attributing income to a parent who is a full-time caregiver to a minor child based on full-time employment at the federal minimum wage alone does not constitute a circumstance that would make attribution of income to the other parent based on previous earnings inequitable under W. Va. Code § 48-1-205(c)(4).

i

4.    "A family [court] or circuit court may not attribute income to a parent who is unemployed or under-employed because the parent has chosen to devote time to care for children (including those who are above pre-school age or those to whom the parties do not owe a joint legal responsibility for support) under circumstances in which a reasonable, similarly-situated parent would have devoted time to care for the children had the family remained intact or, in cases involving a non-marital birth, had a household been formed." Syl. pt. 6, *State ex rel. W.Va. DHHR v. Gibson,* 207 W. Va. 594, 535 S.E.2d 193 (2000).

5.    "When a family [court] or a circuit court, in the exercise of discretion, chooses to attribute income to a parent who is providing care to children, there must be a full explanation on the record why it is in the best interests of the children that the parent be employed rather than providing care to the children." Syl. pt. 7, *State ex rel. W.Va. DHHR v. Gibson*, 207 W. Va. 594, 535 S.E.2d 193 (2000).

Benjamin, Chief Justice:

Petitioner Melinda H.[1] appeals the August 2, 2011, order of the Circuit Court of Tyler County that refused her petition for appeal from the April 20, 2011, Modification Order of the Family Court of Tyler County. The family court's order, *inter alia*, decreased the child support obligation of Respondent William R., II after he voluntarily quit a well-paying job with benefits to take a $10 per hour, part-time position with a company owned by his fiance's mother. Because we find that the family court used the incorrect legal standard in deciding the issue of income attribution, we reverse and remand with directions.

## I. FACTS

The facts as found by the family court are as follows.[2] The parties, Petitioner Melinda H. ("the mother") and Respondent William R., II ("the father"), were divorced on November 14, 2002. The parties have two children: C.P.R., born on December 17, 1991, and D.S.R., born on October 12, 1995. C.P.R. has reached the age of majority and has graduated from high school. At the time of the divorce, the parties agreed that the father would pay child support for the two children in the amount of $700

---

[1] Consistent with this Court's practice of protecting the identity of juveniles in sensitive matters, we identify the last names of the parties and family members in this case by their initials only.

[2] The transcript of the hearing before the family court is not included in the appendix designated by the parties.

1

per month.[3] The order also included a provision requiring the parties to advise each other as financial circumstances changed if the "change of gross income was 15% or greater."

On August 5, 2010, the father filed a Petition to Modify Child Support asserting that the eldest son had been emancipated and that the father's employment income had changed. With regard to the change in employment, until August 2010, the father had been employed at a business called Momentive Performance Materials ("Momentive") and its predecessors-in-interest for 17 ½ years as a production specialist. During his employment with Momentive, the father earned an MBA degree. The family court found that for the period ending August 8, 2010, the father had year-to-date earnings of $52,147, and the most current pay stub reflected a then current monthly salary of $6,919.48.

The father testified before the family court that he is now employed by a business known as Marble King at $10 per hour and works approximately twenty hours per week.[4] According to the father, the stress of working at Momentive was destroying his quality of life and causing him physical ailments such as loss of appetite and sleeping disorders, and other problems including racing thoughts and depression. He further indicated that he had been prescribed medications to deal with these issues by his medical

---

[3] According to the mother's brief, in approximately July, 2006, the father unilaterally began paying the mother $850 a month in child support.

[4] Marble King produces and manufactures marble for various industrial uses.

doctor.  The family court noted, however, that the father did not offer any evidence to corroborate this testimony.  The father also informed the court that he is currently engaged to the daughter of the owner of Marble King.  The father testified of his belief that at some point he may be able to run Marble King or at least share that role with his fiance. Finally, the father recommended that the family court attribute income to him for child support purposes based on his hourly rate of $10 for a forty-hour work week.

The family court adopted the father's recommendation and determined his child support based on an income of $10 an hour at 40 hours per week.  As a result, the family court reduced the father's child support to $332 per month, based on the statutory guidelines. The mother appealed the family court's ruling to the circuit court, and the circuit court refused the petition for appeal in a one-page order. The mother now appeals the circuit court's order to this Court.

## II.  STANDARD OF REVIEW

As noted above, the circuit court refused the mother's petition for appeal from the family court's order. We have explained:

> In reviewing a final order entered by a circuit court judge upon a review of, or upon a refusal to review, a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*.

Syl., *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004). Utilizing this standard, we now proceed to consider the issues before us.

## III. DISCUSSION

On appeal, the mother assigns as error the family court's failure to attribute an earning capacity to the father based on his previous income at Momentive pursuant to W. Va. Code § 48-1-205(b) (2008), which states:

> (b) If an obligor: (1) Voluntarily leaves employment or voluntarily alters his or her pattern of employment so as to be unemployed, underemployed or employed below full earning capacity; (2) is able to work and is available for full-time work for which he or she is fitted by prior training or experience; and (3) is not seeking employment in the manner that a reasonably prudent person in his or her circumstances would do, then an alternative method for the court to determine gross income is to attribute to the person an earning capacity based on his or her previous income. If the obligor's work history, qualifications, education or physical or mental condition cannot be determined, or if there is an inadequate record of the obligor's previous income, the court may, as a minimum, base attributed income on full-time employment (at forty hours per week) at the federal minimum wage in effect at the time the support obligation is established. In order for the court to consider attribution of income, it is not necessary for the court to find that the obligor's termination or alteration of employment was for the purpose of evading a support obligation.

Our seminal case on income attribution for child support purposes is *Porter v. Bego*, 200 W. Va. 168, 488 S.E.2d 443 (1997). In *Porter*, this Court affirmed the lower court's attribution of income to the appellant based on his previous salary and the

4

potential income from his savings where the father voluntarily quit his job and reduced

his interest income by disposing of $90,000 in savings. In Syllabus Point 4 of *Porter*, we

defined "attributed income" as follows:

> "Attributed income" means income not actually earned by a parent, but which may be attributed to the parent because he or she is unemployed, is not working full time, is working below full earning capacity, or has non-performing or under-performing assets. [W. Va. Code § 48-1-205 (2008)].[5] Attributed income consists of moneys which a support obligor should have earned had he or she diligently pursued reasonable employment opportunities, or reasonably utilized, applied, or invested his or her assets.

(Footnote added.)[6]

---

[5] According to W. Va. Code § 48-1-205(a),

> "Attributed income" means income not actually earned by a parent but which may be attributed to the parent because he or she is unemployed, is not working full time or is working below full earning capacity or has nonperforming or underperforming assets. Income may be attributed to a parent if the court evaluates the parent's earning capacity in the local economy (giving consideration to relevant evidence that pertains to the parent's work history, qualifications, education and physical or mental condition) and determines that the parent is unemployed, is not working full time or is working below full earning capacity. Income may also be attributed to a parent if the court finds that the obligor has nonperforming or underperforming assets.

[6] The original provisions governing attribution of income were found in the Code of State Rules. In 1996, the Legislature enacted new code sections to standardize the system for calculating child support obligations. At that time, W. Va. Code § 48A-1A-3 was enacted to govern income attribution for child support purposes. *See Porter, supra.* The statute has been amended several times including in 1997, 2001, and most recently in 2008. The applicable statute is now W. Va. Code § 48-1-205. In addition to making minor stylistic changes over the years, the Legislature has amended the statute to permit the attribution

(continued . . . )

5

Also in *Porter,* this Court recognized the three-part test, set out in subsection (b) of W. Va. Code § 48-1-205 above, that a family court must consider in deciding whether to attribute employment income. With regard to the third part of the test concerning what a "reasonably prudent person" would do in the same circumstances, this Court stated that "[e]ssentially, a family . . . court should examine what a reasonable, similarly-situated parent would have done had the family remained intact[.]" *Porter*, 200 W. Va. at 176, 488 S.E.2d at 451.

In the instant case, this Court's examination of the conclusions of law made by the family court in its modification order indicates that the family court erred in failing to apply to the facts of this case the three-part test articulated in W. Va. Code § 48-1-205(b) and recognized by this Court in *Porter v. Bego*.[7] When this Court applies the three-part test, we find first that the father voluntarily left his employment at Momentive so as to be employed below his full earning capacity at Marble King. Second, we determine that the father is available for full-time work for which he is fitted by prior training and experience. Finally, we conclude that a reasonable father whose ex-wife is a

---

of income from nonperforming or underperforming assets and to insert the last sentence in subsection (b) which provides that "[i]n order for the court to consider attribution of income, it is not necessary for the court to find that the obligor's termination or alteration of employment was for the purpose of evading a support obligation."

[7] With regard to the reasonably prudent person standard, the family court noted only that "[c]ounsel for mother advocated a 'reasonable and prudent' person type standard, however it was advanced as though built upon the supposition that no 'reasonable and prudent' person would do anything other than strive for that next dollar."

6

full-time caregiver to the parties' minor child would not have left his well-paying job at Momentive to accept a job earning $10 an hour and working approximately twenty hours per week.

However, W. Va. Code § 48-1-205(c) provides that income shall not be attributed if any of four conditions exist. Three of these conditions potentially come into play in the instant case. The first such condition is set forth in W. Va. Code § 48-1-205(c)(2), which states:

> (c) Income shall not be attributed to an obligor who is unemployed or underemployed or is otherwise working below full earning capacity if . . . .
> (2) The parent is pursuing a plan of economic self-improvement which will result, within a reasonable time, in an economic benefit to the children to whom the support obligation is owed, including, but not limited to, self-employment or education: Provided, That if the parent is involved in an educational program, the court shall ascertain that the person is making substantial progress toward completion of the program[.]

The father suggests to this Court that his previous income at Momentive should not be attributed to him because of his long-term economic plan in accepting employment at Marble King. This Court has indicated that the standard for determining this issue is whether the parent's endeavor is part of "a plan of economic self-improvement which will result, within a reasonable time, in an economic benefit to the children[.]" *Johnson v. Johnson*, 200 W. Va. 28, 31, 488 S.E.2d 28, 31 (1997) (citations omitted).

7

Our examination of the evidence adduced below leads us to conclude that the father's employment at Marble King will not result, within a reasonable time, in an economic benefit to his minor child who will turn eighteen years of age in October, 2013. The father's future mother-in-law, who owns Marble King, testified that although her daughter will inherit the business, she has no plans to turn the business over to her daughter now or in the foreseeable future. Further, the present agreement between the father and the mother-in-law is not going to result in the father's earning any appreciable increase in money any time soon, in that he earns a very small percentage of the profits from any contracts he brings in, and the evidence below was that this is not going to result in more than a few thousand dollars here and there on a sporadic basis. Therefore, the father failed to meet the statutory requirement that he is pursuing a plan of economic self-improvement which will result, within a reasonable time, in an economic benefit to his minor child.

The second condition which will relieve an obligor from attribution of income is found in W. Va. Code 48-1-205(c)(3). According to this code section,

> (c)     Income shall not be attributed to an obligor who is unemployed or underemployed or is otherwise working below full earning capacity if. . . .
> (3) The parent is, for valid medical reasons, earning an income in an amount less than previously earned[.]

The father testified below to medical and/or psychological problems arising from his employment with Momentive.

8

This Court previously considered the operation of this code section in *Porter, supra,* in which the appellant claimed that he was forced to quit his mining job because of a sleep disorder. This Court characterized the medical evidence in the family court proceeding as follows:

> The appellant testified that he felt on edge, that he continued to doze off and that he was having problems and stress caused by the back-and-forth driving. This prompted him to visit several doctors. He told his doctors that it was "just too much," that "I just can't do it anymore" because "I'm going to end up falling asleep on the job" and causing a serious accident. Therefore . . . he quit his job at the mine. Since that date he has worked various odd jobs, including as a stock clerk at a local grocery store.
>
> Three expert witnesses testified and medical records were introduced showing that the appellant visited various doctors complaining of indigestion, gastritis, and a burning sensation in the middle of his stomach. The appellant was diagnosed as having a generalized anxiety disorder and some depressed moods, such that he would not always react to situations properly. The appellant also complained to the doctors of difficulty sleeping during the day and, conversely, of problems staying awake while working at night. The physicians gave their opinions that stress, shift work, and poor eating habits were at the heart of his problems.
>
> However, on cross-examination, it became clear that none of the appellant's expert witnesses gave an opinion that the appellant was required to quit his shift work at the mine for health reasons. As an example, the appellant's counselor testified that it was *the appellant's* opinion that his sleep problems were likely to cause an accident. The counselor testified that, even though the appellant had an adjustment disorder diagnosis, the appellant could "work any job."

200 W. Va. at 172, 488 S.E.2d at 447 (footnote omitted) (emphasis in original). After reviewing this evidence, this Court found substantial evidence in the record to support the conclusion of the lower court that the appellant "voluntarily, without just cause," quit his

9

mining job, and that the medical evidence produced by the appellant was insufficient to support the conclusion that the appellant was forced to quit his job for medical reasons. 200 W. Va. at 176, 488 S.E.2d at 451. *See also State ex rel. W.Va. DHHR v. Gibson*, 207 W. Va. 594, 535 S.E.2d 193 (2000) (rejecting parent's claim that he did not work for certain time period because he was disabled and/or unable to be fully employed, where parent did not produce any medical records or disability determinations from any agencies to show he was unable to seek work).

In the instant case, the father's testimony of medical and/or psychological problems was wholly unsupported by expert and/or objective documentary evidence. Therefore, based on our prior cases, we conclude that the father failed to show that his earning capacity should not be based on his previous income as a result of valid medical reasons.

The third condition which will relieve an obligor from attribution of income is found in W. Va. Code § 48-1-205(c)(4), which provides:

> (c)     Income shall not be attributed to an obligor who is unemployed or underemployed or is otherwise working below full earning capacity if . . .
> (4)     The court makes a written finding that other circumstances exist which would make the attribution of income inequitable: Provided, That in such case the court may decrease the amount of attributed income to an extent required to remove such inequity.

In this case, the family court found that it would be inequitable to base the father's earning capacity on his previous income while basing attributed income to the mother on full-time employment at the federal minimum wage.[8] Specifically, the family court explained,

> This Court had also requested counsel to specifically address the instant circumstances as when the support obligee has voluntarily remained unemployed thus reducing the income resources available to the parties' children, without any reason now advanced by her for doing so, nor discerned by the Court in the presentation of the evidence, while seeking attribution of income unto the support obligor. Neither counsel did so nor is the Court aware of any case in which the Supreme Court has specifically addressed this issue in any depth, particularly with a consideration of the disparate impact upon the respective parties.
>
> The Court could of course attribute income to both parties, but the act of doing so would result in a nominal reduction in father's obligation under the guidelines and would have little of [sic] any felt impact upon the mother. The attribution of income under statutory directives in the instant case, if attributed, to the father would be based upon past earnings, while the mother's would be based upon minimum wage for 35 hours per week. This would appear to be a wholly inequitable result under the circumstances of this case.

(Footnotes omitted.)

This Court addressed the issue of attributing income to a parent who is a full-time caregiver to a minor child in *State ex rel. W. Va. DHHR v. Gibson, supra*. In *Gibson*, one of the issues was whether income should have been attributed to the

---

[8] The mother has not worked outside the home and her current spouse is the wage earner of the family.

11

appellee, who was a stay-at-home mother, where the parties' daughter was 11 years of age.[9] The appellant father contended that the appellee could leave their daughter at home or in school and earn an income. In affirming the lower court's refusal to attribute income to the appellee mother, this Court held in Syllabus Point 6,

> A family [court] or circuit court may not attribute income to a parent who is unemployed or under-employed because the parent has chosen to devote time to care for children (including those who are above pre-school age or those to whom the parties do not owe a joint legal responsibility for support) under circumstances in which a reasonable, similarly-situated parent would have devoted time to care for the children had the family remained intact or, in cases involving a non-marital birth, had a household been formed.

This Court concluded that a reasonable, similarly situated parent with a 9-month-old child, a 2-year-old child, and (at the time of the hearing) a 9-year-old child could reasonably conclude that it was in the children's best interest to stay home. *See also Josimovich v. Josimovich*, 212 W. Va. 874, 575 S.E.2d 633 (2002) (finding error in attribution of income to appellant mother where lower court failed to provide full explanation on the record why it was in best interests of children that mother return to work). Finally, this Court held in Syllabus Point 7 of *Gibson*:

> When a family [court] or a circuit court, in the exercise of discretion, chooses to attribute income to a parent who is providing care to children, there must be a full explanation on the record why it is in the best interests of the children that the parent be employed rather than providing care to the children.

_____

[9] In *Gibson*, the appellee also was raising a 2-year-old and a 9-month-old child each of whom were fathered by an individual other than the appellant.

Based on our law, we now clarify that for the purpose of determining child support, either not attributing income or attributing income to a parent who is a full-time caregiver to a minor child based on full-time employment at the federal minimum wage alone does not constitute a circumstance that would make attribution of income to the other parent based on previous earnings inequitable under W. Va. Code § 48-1-205(c)(4). Therefore, the family court erred to the extent that it based its decision to not attribute previous income to the father on the fact that it did not attribute income to the mother who is the primary caregiver of the parties' minor child.[10]

## IV. CONCLUSION

Based on the foregoing, for purposes of income attribution for child support purposes, this Court determines that the father's decision to leave his employment at Momentive and go to work at Marble King was not reasonable. We further find that none of the statutory conditions which would relieve the father of attribution of earning capacity based on his previous income are present based upon the record before us.

---

[10] The fourth condition, not pertinent to this appeal, is W. Va. Code § 48-1-205(c)(1) which provides:

> (c)     Income shall not be attributed to an obligor who is unemployed or underemployed or is otherwise working below full earning capacity if . . .
> (1)     The parent is providing care required by the children to whom both of the parties owe a legal responsibility for support and such children are of preschool age or are handicapped or otherwise in a situation requiring particular care by the parent.

13

Therefore, we conclude that the court below erred in failing to attribute to the father an earning capacity based upon his previous income at Momentive.

Accordingly, we reverse the August 2, 2011, order of the Circuit Court of Tyler County that refused the mother's petition for appeal of the April 20, 2011, order of the Family Court of Tyler County. In addition, we remand this case to the Circuit Court of Tyler County and direct that the circuit court remand the case to the Family Court of Tyler County for the sole and limited purpose of deciding the amount of the father's earning capacity based on his previous income at Momentive and determining the amount of child support in accordance with the child support guidelines.

Reversed and remanded with directions.