# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re*: **T.D.**

**No. 17-0316** (Mercer County 16-JA-115)

**FILED**

**October 23, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother J.D., by counsel John G. Byrd, appeals the Circuit Court of Mercer County's March 20, 2017, order terminating her parental, custodial, and guardianship rights to T.D.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), William Huffman, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred by terminating her parental, custodial, and guardianship rights without first requiring the DHHR to provide her with intensive long-term assistance.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2016, the DHHR filed an abuse and neglect petition against petitioner and the father. According to the petition, the DHHR received a referral alleging abuse in the home. Upon investigation, the DHHR concluded that petitioner was unable or unwilling to care for the child. Petitioner appeared to be low-functioning, lacked parental knowledge in caring for the child, and did not understand child development. For instance, petitioner continued to feed the eighteen-month-old child baby food and a bottle after a doctor ordered her to move the child into the next feeding stage. The petition noted that in March of 2016, the DHHR implemented an in-home safety plan in an effort to preserve the family. However, petitioner moved and failed to provide the DHHR and service providers with her new address. While parenting assistance services were offered once a week, petitioner did not appear to understand the concepts or retain the information. Petitioner also admitted to prior controlled substance abuse. During one service session, petitioner advised the Child Protective Service ("CPS") worker that she and the child

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

1

had recently stayed the night in the house of a man whom she had only met one time. The child slept upright in his car seat. Petitioner also admitted to jerking the child by the arm, cursing at him, throwing objects at him, throwing him in his "bouncy seat," balling her fist at him, threating to strike him, and not tending to his needs while he cried.

Thereafter, petitioner underwent a psychological evaluation performed by David T. Ellis, Psy.D., at Laurel Ridge Psychological Associates. Petitioner's composite I.Q. score was deemed to be eighty, or within the low average range. Dr. Ellis stated that the test results suggested that petitioner was capable of managing most basic day-to-day affairs in the course of life. However, by petitioner's own statements to Dr. Ellis, she was unable to do so and had little knowledge of how to manage her daily life. Thus, Dr. Ellis concluded that it was a combination of factors that led to petitioner's inability to care for the child, rather than intellectual limitations; such factors included mental health issues, immaturity, and difficulty learning new information.

In July of 2016, the circuit court held an adjudicatory hearing, during which petitioner stipulated to abusing the child as a result of her failure to seek medical assistance and both verbal and physical abuse. The circuit court additionally granted petitioner a post-adjudicatory improvement period, which required that she (1) participate in parenting and adult life skill sessions; (2) file for social security benefits; (3) go to Southern Highlands Community Mental Health Center to have her medication adjusted; (4) continue with volunteering sessions and classes offered at Southern Highlands; (5) and participate in supervised visitation with the child, among other requirements. In January of 2017, the circuit court held a review hearing during which it found that petitioner was not progressing in her improvement period. The circuit court set the dispositional hearing.

In February of 2017, the circuit court held a dispositional hearing, during which the DHHR presented two witnesses in support of its motion to terminate petitioner's parental rights. According to these witnesses, petitioner failed to comply with several aspects of her post-adjudicatory improvement period. Specifically, the circuit court heard evidence that petitioner did not comply with her classes and when she did comply, she did not have much understanding of the concepts being taught, even when explained to her on a basic level. In fact, a service provider testified that she taught petitioner the importance of maintaining a baby gate at the top and bottom of the stairs so that the child did not fall down them again. The service provider testified that she would install the baby gate only to find it uninstalled at the next visit. A CPS worker testified that the DHHR provided petitioner with a bus pass to attend her services but petitioner threw it away. Further, petitioner's housing situation was not suitable, as she frequently switched homes and stayed with friends and a sister, who also had an open CPS case. In the nine to ten months that the DHHR provided petitioner services, both the CPS worker and the service provider stated that they saw no improvement in petitioner's case. Ultimately, the circuit court found that petitioner did not have the necessary skills to take care of the child and found no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future. It also found that termination was necessary for the child's welfare.

As such, the circuit court terminated her parental, custodial, and guardianship rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating her parental, custodial, and guardianship rights without first requiring the DHHR to provide her with intensive long-term assistance. This Court has explained that:

"Where allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement." Syllabus point 4, *In re Billy Joe M.*, 206 W.Va. 1, 521 S.E.2d 173 (1999).

Syl. Pt. 4, *In re Maranda T.*, 223 W.Va. 512, 678 S.E.2d 18 (2009). Petitioner incorrectly states this standard when she argues that the circuit court erred in not requiring the DHHR to provide intensive long-term assistance. Contrary to petitioner's assertion, the standard requires that the DHHR determine whether a parent, in cases involving intellectual capacity, can adequately care for the child with intensive long-term assistance. Such determination must be made as soon as possible. We do not find petitioner's argument regarding the services provided compelling, as

---

[2] Petitioner's parental, custodial, and guardianship rights were terminated below. The father voluntarily relinquished his parental rights below. The child was placed in the home of his maternal grandfather with the goal of adoption therein.

the record is clear that the DHHR satisfied its burden to determine whether intensive long-term assistance was needed in this matter.

The record shows that the DHHR provided in-home services to petitioner starting in May of 2016, before the petition was filed. Once the petition was filed, the DHHR supplied more services, which lasted through the dispositional hearing in February of 2017, approximately nine months. These services included supervised visitation, parenting and adult life skills classes, and volunteering sessions or classes scheduled at Southern Highlands. The DHHR also assisted petitioner in filing for social security benefits and provided petitioner with a bus pass. Contrary to petitioner's argument that the services were insufficient due to not being taught at her developmental level, the record indicates that the service provider attempted to tailor the lessons to her needs by explaining concepts to petitioner by repeating the material often and using basic terms, among other techniques.

Further, in petitioner's psychological evaluation, Dr. Ellis noted that if petitioner was unable to progress over the next six months, he would seriously question her ability to make substantive changes beyond that timeframe if additional resources were made available. Witness testimony established that these services were provided for at least six months following the psychological evaluation, at which point the DHHR was aware of the extent of petitioner's limitations and adjusted the services accordingly. The record shows that, even with six months of assistance provided after the psychological evaluation, petitioner was simply unable to comply with the requirements of her improvement period. Petitioner missed classes due to moving without providing an address, failed to follow through with services offered by Southern Highlands, failed to implement strategies taught to her when she did attend classes, and failed to properly maintain her medication, among other things. Accordingly, the DHHR expediently determined that petitioner was unable to adequately care for her child, even with intensive long-term assistance. Based on this evidence, we find no error in the circuit court's findings that petitioner did not have the skills necessary to adequately care for the child, even with intensive long-term assistance.

Accordingly, we also find no error in the circuit court's finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse. West Virginia Code § 49-4-604(c)(3) clearly indicates that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.
>  . . .

In this case, the DHHR provided evidence that petitioner failed to follow through with her case plan. Petitioner was often hard to reach in order to schedule services and never initiated services on her own. *See* W.Va. Code § 49-4-610(4)(A) (parents are "responsible for the *initiation* and

completion of all terms of the improvement period) (emphasis added).When petitioner attended classes, she did not implement the strategies being taught. Petitioner also failed to maintain her medications. As such, the record is clear that the circuit court had overwhelming evidence to support its finding, and we find no error in this regard. Based upon the evidence outlined above, it is clear that termination of petitioner's parental, custodial, and guardianship rights was warranted. In addition to finding that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect, the circuit court found that termination was necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental, custodial, and guardianship rights upon such findings. Accordingly, we find no error in the circuit court's termination of petitioner's parental, custodial, and guardianship rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 20, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**: October 23, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker