**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**FILED**

**March 12, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* B.S.

**No. 17-0977** (Hancock County 16-JA-27)

**MEMORANDUM DECISION**

Petitioner Mother, A.R., by counsel, P. Zachary Stewart, appeals the Circuit Court of Hancock County's October 2, 2017, order terminating her parental rights to B.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Cathryn A. Nogay, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in (1) failing to order the DHHR to file a unified child and family case plan pursuant to West Virginia Code § 49-4-408, (2) failing to hold a dispositional hearing within thirty days of the termination of petitioner's post-adjudicatory improvement period, and (3) failing to enter a dispositional order within ten days of the close of the dispositional hearing.[2]

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On March 16, 2016, the DHHR filed an abuse and neglect petition against petitioner alleging that upon birth, B.S. tested positive for buprenorphine and that petitioner tested positive for buprenorphine and amphetamines. The DHHR further alleged that petitioner had a history of heroin abuse and was taking buprenorphine during her pregnancy to refrain from using heroin. Two days after the child's birth, he was transferred from Weirton Medical Center to Allegheny General Hospital in Pittsburgh, Pennsylvania, in order to receive more intensive treatment due to symptoms of withdrawal. B.S. was placed in a foster home upon release from the hospital. According to the DHHR, petitioner had four older children that were the subject of an abuse and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner raises no specific assignment of error regarding the termination of her parental rights.

1

neglect proceeding in Ohio that stemmed from an incident wherein one of the children was hospitalized with a subdural hematoma, occipital skull fracture, hypoxic brain injury, 7th rib fracture, 8th rib fracture, left tibia fracture, left 1st toe fracture, left radius fracture, left ulna fracture, and right radius fracture. The child was rendered blind due to his injuries, all of which were found to be caused by non-accidental means. All four of petitioner's older children were removed from her custody and placed with relatives. According to the record, the DHHR did not establish that petitioner's parental rights to the four older children were terminated. None of those children are at issue in this appeal. Petitioner waived her preliminary hearing.

On September 27, 2016, the circuit court held an adjudicatory hearing wherein petitioner stipulated that she abused drugs while pregnant with B.S. and that her history of drug abuse impaired her ability to safely parent the child. The circuit court granted petitioner a post-adjudicatory improvement period. Additionally, during the hearing, the circuit court reviewed a written document entitled "[Petitioner's] Post-Adjudicatory Plan of Improvement," which contained the terms and conditions of petitioner's improvement period as formulated by the multidisciplinary team ("MDT"). The circuit court reviewed the document in detail on the record with petitioner and confirmed her understanding of its terms and conditions. The record indicates that the MDT met at least twice concerning the terms and conditions of petitioner's improvement period. According to the DHHR, the plan of improvement identified petitioner's drug abuse issues and set forth a plan, including services and specific directions, for petitioner to follow to assist her in implementing the plan and successfully achieving its goals.

In November of 2016 and December of 2016, the circuit court held review hearings and ordered that petitioner's post-adjudicatory improvement period continue. In March of 2017, petitioner was incarcerated in Ohio and entered a plea to a felony charge of child endangerment, based on the non-accidental injuries caused to one of her older children, for which she was sentenced to serve a six-month sentence of incarceration followed by intensive supervised probation. Petitioner remained incarcerated for the remainder of the proceedings. On June 19, 2017, the circuit court held a status hearing wherein the guardian reported to the circuit court regarding the status of petitioner's criminal conviction and sentence and moved the circuit court to terminate petitioner's post-adjudicatory improvement period and schedule the case for a final dispositional hearing. Although petitioner's post-adjudicatory improvement period expired naturally in March of 2017, the circuit court granted the guardian's motion and scheduled the matter for a final dispositional hearing.

On August 4, 2017, the circuit court held a dispositional hearing. A caseworker testified that petitioner failed to fully participate in her post-adjudicatory improvement period. Specifically, she testified that petitioner missed her psychological evaluation appointment and when it was rescheduled, petitioner was already incarcerated and unable to attend. Additionally, although petitioner did not screen positive for illicit drugs during her improvement period, she screened only thirty-five of the ninety-five times screens were requested prior to her incarceration. Further, petitioner failed to keep in contact with her caseworker and attended thirty-four visitations with B.S., but cancelled twenty-four visits, most of which were cancelled without good cause. Lastly, the caseworker reported that petitioner failed to attend therapy as ordered, and attended three out of seventeen parenting sessions. The circuit court found that there was no reasonable likelihood that the conditions of abuse and neglect could be corrected in the

2

near future and that termination of petitioner's parental rights was in the child's best interests. Ultimately, the circuit court terminated petitioner's parental rights in its October 2, 2017, order.[3] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, the Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in failing to order the DHHR to develop and file a child and family case plan pursuant to West Virginia Code § 49-4-408(a). We find petitioner's argument to be unpersuasive. While petitioner is correct that West Virginia Code § 49-4-408(a) requires that a family case plan be filed within sixty days of the child coming into foster care or thirty days of an improvement period's inception, the Court does not find reversible error on that issue under the circumstances of this case.

> Where it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

Syl. Pt. 5, *In re Edward B.*, 210 W. Va. 621, 624, 558 S.E.2d 620, 623 (2001).

According to petitioner, no MDT meetings were held for the purpose of developing a unified child and family case plan and, thus, there were no standards by which to gauge her progress through her improvement period. However, the record indicates that the MDT met at least twice to develop the terms and conditions of petitioner's improvement period. Moreover,

---

[3]The father voluntarily relinquished his parental rights to the child in 2016. According to the guardian and the DHHR, the child is placed in foster care and the permanency plan for the child is adoption in that home.

these terms and conditions were memorialized in petitioner's post-adjudicatory plan of improvement, which the circuit court reviewed with petitioner in detail on the record. The purpose of a case plan is to "set forth an organized, realistic method of identifying family problems and the logical steps to be used in resolving or lessening these problems." Syl. Pt. 5, in part, *State ex rel. W.Va. Dep't of Human Servs. v. Cheryl M.*, 177 W.Va. 688, 356 S.E.2d 181 (1987). Here, petitioner's post-adjudicatory plan of improvement served the same purpose as a case plan as it clearly identified petitioner's issues of substance abuse and provided services for petitioner to address these issues, as well as specific directions and rules for petitioner to follow to assist her in implementing the plan and successfully achieving its goals.

Petitioner claims that her case is similar to *In re Desarae M.*, 214 W.Va. 657, 591 S.E.2d 215 (2003), in that a formal family case plan was neither ordered nor filed as required by West Virginia Code § 49-4-408(a). However, this case is distinguished from this Court's decision in *Desarae M.* because, unlike the petitioner in *Desarae M.*, petitioner herein was provided with all the required direction and assistance of a case plan, simply under a different name. Therefore, we find that, under the specific circumstances of this case, the circuit court's failure to order a case plan to be filed does not constitute a substantial disregard or frustration of the applicable rules or statutes such that vacation of the dispositional order is warranted.

Next, petitioner argues that the circuit court erred in failing to hold a dispositional hearing within thirty days of the termination of her post-adjudicatory improvement period in violation of Rule 32(a) of the Rules of Procedure for Child Abuse and Neglect Proceedings. However, petitioner does not present any argument as to how she was prejudiced by this procedural delay. Accordingly, we find this argument meritless.

Again, under the specific facts of this case, we find that the circuit court's failure to strictly comply with the applicable rules and statutes does not constitute a substantial disregard or frustration such that vacation is warranted. Petitioner's dispositional hearing was held on August 4, 2017, approximately forty-five days after her post-adjudicatory improvement period was terminated. We find that a fifteen-day delay in holding a dispositional hearing does not warrant any relief for petitioner, especially in light of the fact that she does not allege any prejudice as a result.

Lastly, petitioner asserts that the circuit court erred in failing to enter a dispositional order within ten days of the close of the dispositional hearing. Again, petitioner makes no argument as to how she was prejudiced by this procedural delay. She fails to make any claim that the outcome of the disposition would have been any different had the circuit court entered its order ten days after the dispositional hearing. Again, under the specific facts of this case, we find that the circuit court's failure to timely enter the dispositional order does not constitute a substantial frustration or disregard of the applicable rules or statutes such that vacation is warranted and that petitioner is not entitled to relief in this regard.

For the foregoing reasons, we find no error in the decision of the circuit court, and its October 2, 2017, order is hereby affirmed.

Affirmed.

4

**ISSUED**:  March 12, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker