# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **J.C.**

**No. 18-0091** (Mercer County 17-JA-65)

## MEMORANDUM DECISION

Petitioner Mother L.C., by counsel Earl H. Hager, appeals the Circuit Court of Mercer County's January 19, 2018, order terminating her parental, custodial, and guardianship rights to J.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Brandolyn N. Felton-Ernest, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Shannon L. Baldwin, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred by terminating her parental, custodial, and guardianship rights without a determination as to whether she could care for the child with extensive long-term assistance.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In March of 2017, the DHHR filed a petition alleging that J.C. suffered significant physical injuries that were inflicted by his father. The DHHR alleged that when questioned about the physical abuse, petitioner described a history of abuse by the father against herself and the child. Despite petitioner's acknowledgement of the abuse, the DHHR alleged that petitioner never expressed concern regarding the father's ability to care for the child. Additionally, the DHHR alleged that petitioner's home was inappropriate for a child due to exposed insulation and a lack of running water, food, and other items required for the care of an infant. The circuit court held a preliminary hearing and found that imminent danger existed if the child were to be returned to petitioner.

In April of 2017, petitioner underwent a psychological evaluation. The psychologist noted that petitioner suffered from "significant cognitive limitations, immaturity, a lack of

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

insight, and a limited understanding of the needs and demands that come with raising a child." The psychologist stated that petitioner's serious learning problems would make adopting new parenting skills "extremely difficult, if not potentially impossible." During the evaluation, petitioner indicated that she believed she could care for the child without any assistance and did not recognize the shortcomings in her parenting. The psychologist recommended that petitioner be instructed through verbal discussion or audiovisual materials; however he expressed doubt that any instruction would be effective. Further, the psychologist noted a history of psychiatric problems, for which petitioner was medicated in the past, and recommended a psychiatric evaluation to determine the efficacy of a pharmacological intervention. The psychologist concluded that petitioner should be closely observed during supervised visitations to see if she would implement new parenting skills. If petitioner failed to make use of new skills, then the psychologist opined that it was unlikely that she would ever improve.

The circuit court held an adjudicatory hearing in November of 2017. Petitioner testified that the father physically abused the child in her presence in the past, including pushing the child into the edge of a coffee table and forcing a baby bottle into the child's mouth so hard that his mouth bled. Additionally, petitioner testified that the father became extremely violent when intoxicated. However, when petitioner needed to go to the hospital and needed temporary placement for the child, she asked the father to take care of him instead of seeking help from other family members in the area. The child was injured during the most recent placement with the father. Ultimately, the circuit court found clear and convincing evidence that petitioner failed to protect the child from his father and adjudicated her as an abusing parent. Further, the guardian moved to suspend visitation due to some irregular behavior that occurred during the child's visits with petitioner. According to the guardian, the child would "space out" for minutes at a time and become unresponsive to any stimuli. Additionally, petitioner had not participated in visitation since early October due, in part, to a brief twenty-two day incarceration for animal cruelty and, in part, because petitioner moved out of the county. The circuit court granted the motion to suspend supervised visitations.

In January of 2018, the circuit court heard evidence on the DHHR's motion to terminate petitioner's parental rights and petitioner's motion for a post-adjudicatory improvement period. A DHHR worker testified that petitioner participated in parenting classes but failed to incorporate and implement the skills taught to her. The worker believed that petitioner's inability to parent was due to her mental disability and lack of understanding. The visitation supervisor testified that petitioner needed reminding to do basic tasks during visitations, such as changing the child's diaper and interacting with the child. The visitation supervisor testified that for multiple visits petitioner would simply play a recorded song repetitively until the child fell asleep. The visitation provider did not believe there was a bond between petitioner and the child. Additionally, the visitation supervisor testified that petitioner ignored simple safety tips given during visitations and would not retain any tips or pointers given during prior visitations. The parenting class instructor testified that she was aware of petitioner's special needs for slow and thorough instruction and that she was careful to fully explain and reiterate lessons to petitioner and request feedback from her to be sure she understood the lessons. The instructor testified that, despite careful instruction, petitioner failed to implement the skills addressed in the classes. Also, petitioner's mother testified that when she cleaned petitioner's home while petitioner was incarcerated for animal cruelty, the home was filthy with animal feces and that she filled eighty

trash bags with debris while cleaning. Finally, petitioner testified that she had a psychiatric appointment to determine if she needed medication. She testified that she moved into a new apartment in late December of 2017 which, she alleged, was clean and suitable for a child. Further, petitioner testified that she would participate in any services required.

Ultimately, the circuit court found that petitioner would be unable to improve her parenting through continued instruction and denied her motion for a post-adjudicatory improvement period. The circuit court concluded that there was no reasonable likelihood that petitioner would be able to correct the conditions of abuse or neglect and that it was necessary for the welfare of the child to terminate her parental, custodial, and guardianship rights. Accordingly, the circuit court terminated petitioner's parental, custodial, and guardianship rights by its January 19, 2018, order. Petitioner now appeals that order.[2]

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner argues that the circuit court erred in terminating her parental, custodial, and guardianship rights because the DHHR did not determine whether she could provide for the child with intensive long-term assistance. Petitioner asserts that her intellectual capacity hindered her from improving her parenting. She argues that, pursuant to Syllabus Point 4 of *In re Miranda*, 223 W.Va. 512, 678 S.E.2d 18 (2009), the DHHR should have determined whether she could have made improvements if given intensive long-term assistance. Additionally, the psychologist recommended a psychiatric evaluation, but the DHHR never followed through with that recommendation. Petitioner argues that the DHHR failed to make an adequate determination and, therefore, the circuit court clearly error in terminating her parental, custodial, and guardianship rights. Upon our review of the record, we disagree that the DHHR failed to make such determination.

---

[2]The father's parental rights were also terminated in that order. According to the parties, the child is placed in a specialized foster home after the removal from his parents. His permanency plan is adoption in that home.

This Court has explained that:

> "[w]here allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement." Syllabus point 4, *In re Billy Joe M.*, 206 W.Va. 1, 521 S.E.2d 173 (1999).

*Maranda T.*, 223 W.Va. at 513, 678 S.E.2d at 19, Syl. Pt. 4. Thus, the standard set forth above requires the DHHR to determine whether parents can adequately care for a child with intensive long-term assistance, but does not require that such assistance be provided. The record indicates that an adequate determination was made. While petitioner is correct that the evaluating psychologist made recommendations as to further evaluations, she ignores other sections in the report that indicate the psychologist's concern that she would never be able to learn how to properly parent the child. Despite multiple reservations, the psychologist recommended that petitioner be given a period of instruction and supervised visitation to determine if she could improve her parenting. The DHHR followed this recommendation and the providers all testified that petitioner made no progress despite the provision of those services. Moreover, petitioner ignored safety tips provided during visitation and never utilized the lessons from her parenting classes.

Petitioner further argues that the service providers were not certified to educate individuals with intellectual disabilities. However, petitioner cites no authority requiring providers to hold such certification, and certification is not required in the standard set forth above. Moreover, the service providers were experienced in their fields and detailed the alterations in their typical instruction to suit petitioner. Thus, we do not find this argument persuasive. The circuit court's ultimate decision to terminate petitioner's parental, custodial, and guardianship rights was consistent with the psychologist's recommendations. Accordingly, petitioner is entitled to no relief on this issue.

Second, we find that the circuit court properly terminated petitioner's parental, custodial, and guardianship rights upon a finding that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect and that termination was necessary for the child's welfare. According to the evaluating psychologist, if petitioner's early supervised visitation showed no signs of improvement from her parenting classes, then it was unlikely that petitioner would ever learn the skills to adequately care for the child. There was ample uncontradicted testimony that petitioner showed no signs of improvement during visitations. Further, visitation appeared so detrimental to the child that it was necessarily suspended. Accordingly, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and/or neglect and that termination of her parental, custodial, and guardianship rights was necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate a parent's parental, custodial, and guardianship rights upon such findings.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 19, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  June 11, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Elizabeth D. Walker

Justice Loughry, Allen H., II suspended and therefore not participating.