STATE OF WEST VIRGINIA

*In re* **K.C., K.T-G., K.T., K.G.-1, and K.G.-2.**

**No. 18-0326** (Wood County 16-JA-60, 61, 62, 63, and 17-JA-265)

**FILED**

**October 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father A.G., by counsel Ernest M. Douglass, appeals the Circuit Court of Wood County's March 27, 2018, order terminating his parental rights to K.C., K.T-G., K.T., K.G.-1, and K.G.-2.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Eric K. Powell, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in temporarily suspending visitation with the children during the proceedings due to his alleged conduct toward a visitation supervisor, not allowing him to visit with K.T-G. during the proceedings, and terminating his parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On May 19, 2016, the DHHR filed an abuse and neglect petition alleging that petitioner and his girlfriend were arrested and incarcerated for delivery of heroin and that they abused and sold heroin in the home they shared with the children.[2] The DHHR also alleged that the home was unsafe and unsanitary for the children. Petitioner waived the preliminary hearing. On June 2, 2016, the circuit court held an adjudicatory hearing during which petitioner stipulated to the

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990). Additionally, because two of the children share the same initials, they will be referred to as K.G.-1 and K.G.-2, respectively, throughout this memorandum decision.

[2]At the time the original petition was filed, petitioner and his girlfriend had one child together, K.G.-1. Petitioner is also the biological father of K.T. and claimed to be the psychological father of K.C. and K.T-G. Petitioner is also the father of K.G.-2, who was born after the original petition was filed. K.T. and K.T-G. share the same mother.

1

allegations of abuse and neglect. The circuit court granted petitioner a six-month post-adjudicatory improvement period and ordered him to complete parenting and adult life skills classes and comply with drug screens and treatment for his addiction. However, due to petitioner's incarceration until December of 2016, he was delayed in beginning services.

On February 21, 2017, the circuit court held a review hearing and granted petitioner an extension of his post-adjudicatory improvement period due to his earlier incarceration. However, the circuit court admonished petitioner based upon a report that petitioner did not attend parenting and adult life skills services from February 2, 2017, to February 13, 2017, and that he produced two abnormal drug screens during that same time period. Petitioner moved for supervised visitation with all of the children, but informed the circuit court that, according to the guardian, K.T-G. did not want to visit with petitioner "due to the abuse that he suffered at the hands of [petitioner]." The guardian informed the circuit court that K.T-G. did not want to return to petitioner's home because the child had received "a pretty violent hand slap to the face, leaving a bruise or a red mark" from petitioner. The circuit court did not order visitation between petitioner and K.T-G. The DHHR was ordered to request a report from the child's therapist. On April 28, 2017, the circuit court held a review hearing. Petitioner renewed his motion for visitation with K.T-G., but the circuit court denied the motion because no report from his therapist had been received. Petitioner was ordered to continue participating in services and the matter was scheduled for further review in June of 2017. On June 2, 2017, the circuit court held a review hearing where it found that petitioner was compliant with his improvement period. The circuit court granted petitioner an additional six-month improvement period.

On August 23, 2017, the circuit court held a review hearing. The DHHR reported that petitioner had several abnormal diluted screens, as well as one positive screen for opiates in July of 2017. The guardian reported that during one of petitioner's visits with the children, one of the children disclosed that petitioner "punched or hit or struck [K.G.-1] in the face." According to the guardian, the child also reported allegations of "drug activity" in the home. The circuit court suspended visitation with the children until petitioner could produce "a series of clean and normal drug screens." Following the hearing, during a forensic interview, the child again disclosed that petitioner was packaging drugs in the home during an unsupervised visit.

Following the birth of K.G.-2 in September of 2017, the DHHR filed an amended petition alleging, among other things, that the mother used heroin throughout her pregnancy with K.G.-2 and that petitioner knew of her substance abuse but did nothing to stop it. On October 20, 2017, the circuit court held a review hearing, and the DHHR reported that petitioner continued to test positive for illicit substances and was seeking inpatient treatment. On November 7, 2017, petitioner did not appear for what was scheduled as an adjudicatory hearing on the amended petition, but was represented by counsel. The DHHR reported that a family member informed the DHHR that petitioner had overdosed on November 2, 2017, and was revived with Narcan. On December 20, 2017, the circuit court held an adjudicatory hearing on the amended petition, and petitioner admitted to knowing the mother was using heroin during her pregnancy with K.G.-2. Petitioner was adjudicated of abuse and neglect as to K.G.-2 and the continued abuse and neglect of his other children based upon his drug abuse and packaging drugs in the children's presence.

On February 23, 2018, the circuit court held a dispositional hearing. The DHHR reported that petitioner continued to use illegal substances. The DHHR presented evidence that petitioner had been drug screening at the day report center since January of 2017, and since that time, he had around one hundred negative screens; however, he had missed thirty screens, tested positive on twenty-five screens, and twelve of the screens were diluted. Petitioner tested positive for amphetamines, methamphetamines, and morphine on February 13, 2018, and then produced a diluted drug screen on February 20, 2018.

Petitioner testified that he continued to use illegal substances and was seeking inpatient treatment. Petitioner admitted to completing only five days of inpatient treatment in October of 2017 before he was discharged without completing the program. He explained that in January of 2018, he began participating in an intensive outpatient program. Petitioner also testified that his visits with the children were suspended due to a visitation supervisor's "false statements;" the visits were allegedly suspended because petitioner made the supervisor feel uncomfortable. However, the supervisor denied this allegation under oath and said that she stopped working on petitioner's case because she took a different job. Following petitioner's testimony, the DHHR argued that the children had been in the DHHR's custody for twenty-one months, and that, during that time, petitioner failed to complete substance abuse treatment. Following counsels' arguments, the circuit court noted that the children were in need of continuity of care and caretakers and that returning to petitioner's home was not in the children's best interests. The circuit court found that the DHHR made reasonable efforts during the proceedings to reunify the family. It further found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect. Petitioner's request for post-termination visitation was denied. Ultimately, the circuit court terminated petitioner's parental rights in its March 27, 2018, order.[3] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record

---

[3]The parental rights of the respective mothers of all the children were terminated. Additionally, the parental rights of the respective fathers of K.C. and K.T-G. were also terminated. According to respondents, the permanency plan for K.T-G. and K.T. is continuation in the legal guardianship of their maternal grandparents. The permanency plan for K.C., K.G.-1, and K.G.-2 is adoption by their maternal aunt.

3

viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in temporarily suspending visitation with the children due to a visitation supervisor's allegedly false statements that petitioner made her feel uncomfortable. However, this argument is not supported by the record. The record is devoid of any order suspending visitation due to statements made by a visitation supervisor. In fact, at the dispositional hearing, the visitation supervisor denied making any allegations that petitioner made her feel uncomfortable during visits and stated that she stopped working on petitioner's case and supervising visits because she took a different job. On the contrary, the record shows that visitation was suspended following the August 23, 2017, hearing due to petitioner's positive and abnormal drug screens. Additionally, according to one of the children, petitioner was packaging drugs in the home and hit K.G.-1 during an unsupervised visit. Nevertheless, the circuit court ordered that petitioner's visitation with the children be restored if he could produce a series of clean and normal drug screens. Petitioner failed to do so from the time of the August 23, 2017, hearing until the dispositional hearing in February of 2018, at which time his parental rights were terminated. Therefore, we find petitioner is entitled to no relief.

Petitioner next argues that the circuit court erred in not allowing him to visit with K.T-G. during the proceedings. We disagree. Pursuant to Rule 15 of the Rules of Procedure for Child Abuse and Neglect Proceedings, "[i]n determining the appropriateness of granting visitation rights to the person seeking visitation, the court shall consider . . . the overall effect granting or denying visitation will have on the child's best interests." Although the circuit court did not receive a recommendation from K.T-G.'s therapist as requested, the record indicates that petitioner struck or hit the child on at least one occasion. Also, the guardian reported that the child did not want to visit with petitioner because of the abuse he had suffered while in petitioner's care. Therefore, it was clearly not in the best interest of the child to have visits with petitioner. We find that the circuit court did not abuse its discretion in denying petitioner visitation with K.T-G.

Next, petitioner argues that the circuit court erred in terminating his parental rights. In support, he argues that he "substantially successfully completed his improvement period." We disagree. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(3) indicates that a situation where there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the

4

abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child. . . .

Petitioner substantially complied with the terms and conditions of his improvement periods early in the proceedings. However, at the August 23, 2017, review hearing, the DHHR reported that petitioner had produced some abnormal drug screens and that there had been drug activity in the home. Additionally, evidence was presented that one of the children reported that petitioner struck K.G.-1 in the face during a visit. Between the August 23, 2017, hearing and the dispositional hearing, petitioner failed to appear for several drug screens and also produced abnormal and positive drug screens. Just ten days before the dispositional hearing, petitioner tested positive for amphetamines, methamphetamines, and morphine. He then produced a diluted screen three days prior to the dispositional hearing. While petitioner participated in outpatient substance abuse treatment, he continued to abuse substances and was discharged from an inpatient treatment program in October of 2017, after only five days of treatment. Petitioner failed to complete an inpatient treatment program, as required by his case plan. While petitioner also argues that the DHHR did not provide the services necessary to reunify his family or facilitate his entry into long-term drug treatment, this assertion is not supported by the record. In fact, the record shows that, during the proceedings, petitioner participated in drug screens, visitations with the children, and parenting and adult life skills classes. Further, at the dispositional hearing, the circuit court found that the DHHR made reasonable efforts during the proceedings to reunify the family. Based on this evidence, it is clear there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of petitioner's parental rights was in the children's best interest. Therefore, we find no error in the termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 27, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: October 19, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Paul T. Farrell sitting by temporary assignment
Justice Tim Armstead
Justice Evan H. Jenkins

Justice Allen H. Loughry II suspended and therefore not participating

5