# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **B.S. and A.D.**

**No. 18-0421** (Kanawha County 16-JA-442 and 443)

**FILED**

**November 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother R.H., by counsel Edward L. Bullman, appeals the Circuit Court of Kanawha County's April 17, 2018, order terminating her parental rights to B.S. and A.D.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), W. Jesse Forbes, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental rights when she substantially complied with her post-adjudicatory improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

On August 11, 2016, the DHHR filed an abuse and neglect petition alleging that petitioner's home was uninhabitable for children.[2] On August 9, 2016, a Child Protective Services ("CPS") worker was escorted to the home by police and observed "broken glass and trash next to the foot of the stairs to enter the home." The CPS worker also reported that the home smelled of urine and feces with feces visible on the floor. The CPS worker also observed that there was no proper sleeping area for the children in the home. Although there were mattresses on the floor, they did not have sheets on them and were filthy. Further, dirty dishes were piled high in the sink with decomposing food attracting flies. The CPS worker also reported that the children were often seen playing in the street at all hours of the day and night and had a large number of absences from school. Petitioner waived her preliminary hearing.

On September 28, 2016, the circuit court held an adjudicatory hearing and petitioner stipulated to the allegations of abuse and neglect. She was adjudicated as an abusing parent and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

[2]Petitioner is the mother of B.S. and the legal guardian of A.D.

1

granted a post-adjudicatory improvement period. On February 23, 2017, the circuit court held a review hearing during which the circuit court ordered petitioner's post-adjudicatory improvement period to continue. The circuit court gave the DHHR discretion to expand petitioner's visits with the children to be unsupervised and overnight. The circuit court advised petitioner that she needed to obtain appropriate beds for the children.

According to the DHHR, a hearing was held in March of 2017. The DHHR reported that petitioner was participating in services. The children were placed in her physical custody at the end of that month. However, in April of 2017, the DHHR reported that petitioner's apartment was "cramped" and that she often had other individuals in the home, including a friend who was not allowed to be alone with the children. In May of 2017, according to the DHHR, petitioner continued to have "major issues keeping the apartment clean and the children were again removed and placed with a foster parent." The foster mother reported that when the children arrived, they had lice there were cockroaches crawling out of bags that petitioner sent with the children. According to the DHHR, in June of 2017 petitioner denied that the conditions of the home when the children were removed were a safety hazard to them and that the children had lice. Also, a service worker observed that during visits petitioner was "not actively parenting, not actively using positive discipline or keeping the children safe. She was also not cleaning the home and the children were missing school frequently."

On September 27, 2017, the circuit court held a dispositional hearing. The guardian moved to terminate petitioner's visits with the children due to various issues. The visitation supervisor testified that during visits petitioner did not try to interact with the children or engage in appropriate conversations with them. She further testified that the children expressed to her that they did not want to visit with petitioner and that petitioner's attitude during visits was poor. The circuit court ordered that visitation continue, but if the children did not wish to visit with petitioner, they were not required to do so. The dispositional hearing was continued.

On November 1, 2017, the circuit court held a final dispositional hearing. The DHHR presented testimony from a service provider that petitioner complied with services, but had not "gained much benefit from them." Further, according to the service provider, petitioner was not supposed to allow her adult sons into the home due to their drug addictions and criminal histories. However, petitioner allowed them into her home and around the children. The service provider also testified that she did not believe that petitioner was physically capable of caring for the children. Lastly, the service provider testified that the home was unfit for the children because it was "too cluttered" and "not clean." Next, a CPS worker testified regarding the deplorable conditions of the home that led to the filing of the petition. She explained that after the children were returned to petitioner's custody in March of 2017, the home returned to a deplorable condition. She further testified that there were often inappropriate adults in and out of the home when the children were present, including petitioner's friend who, according to the CPS, was not allowed to be alone with the children. The CPS worker also reported concerns with the children's attendance at school. She recommended that petitioner's parental rights be terminated.

Petitioner denied that her two adult sons had been to her home during the preceding months. She testified that she filled out an application for a rental home the day before the

dispositional hearing and planned to move into that home with the children. Petitioner admitted that she failed to maintain the house in an appropriate condition for the children when she was depressed. However, she explained that she sought treatment for various physical and mental health issues and resumed taking medication to treat her depression. Following the testimony, the circuit court found no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that termination of her parental rights was in the children's best interests. Ultimately, the circuit court terminated petitioner's parental rights to B.S. and her guardianship rights to A.D. in its April 17, 2018, dispositional order. Petitioner now appeals that order.[3]

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

On appeal, petitioner argues that the circuit court erred in terminating her parental rights when she substantially complied with her post-adjudicatory improvement period. In support, she asserts that, despite her struggles with mental illness, she resumed treatment for her depression and demonstrated that she "reached a level of functioning sufficient to care for her children." We disagree. "In making the final disposition in a child abuse and neglect proceeding, the level of a parent's compliance with the terms and conditions of an improvement period is just one factor to be considered. The controlling standard that governs any dispositional decision remains the best interests of the child." Syl. Pt. 4, *In re B.H.*, 233 W.Va. 57, 754 S.E.2d 743 (2014).

Here, the record shows that petitioner participated in services, but did not benefit from them. The record shows that petitioner's home remained "too cluttered" and dirty. Although she argues that the brief return of her children was evidence that she "reached the minimum level required for the safe return" of her children, the record shows that after her children were

---

[3]A.D.'s biological parents' parental rights were also terminated and B.S.'s father is deceased. According to respondents, the permanency plan for B.S. and A.D. is adoption into their current foster placement.

3

returned, the home returned to a deplorable condition. Due to the condition of the home, the DHHR was again required to remove the children from petitioner's care. At the dispositional hearing, the DHHR presented evidence that the children did not want to visit with petitioner and that she had a poor attitude during visits. The record also shows that petitioner allowed inappropriate individuals, including her adult sons, into the home. In addition, petitioner refused to acknowledge that the conditions of her home were safety issues for the children. Based on this evidence, it is clear that living in petitioner's home was contrary to the children's best interests.

Further, we find no error in the circuit court's termination of petitioner's parental rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. West Virginia Code § 49-4-604(c)(3) clearly indicates that a situation where there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts[.]"

As discussed above, although petitioner complied with services, she did not benefit from them. The children were first removed due to the deplorable conditions of petitioner's home in August of 2016 when the CPS worker found, among other things, broken glass outside the front door of the home, feces on the floors, and insects in the home. At that time, the children did not have appropriate bedrooms or beds. Although she maintained her home in an appropriate condition for a period of time in order for the children to be returned to her custody in March of 2017, following their return, petitioner failed to clean the home and allowed it to revert back to a deplorable condition. In May of 2017, the children were returned to the foster mother's home with lice and cockroaches from petitioner's home. Petitioner failed to acknowledge the dangers that the conditions in the home caused. Further, petitioner also allowed inappropriate individuals into her home and around the children, despite direction from the DHHR not to do so. Therefore, it is clear that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect in the near future and that termination of her parental rights was in the children's best interests.

For the foregoing reasons, we find no error in the decision of the circuit court, and its April 17, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 19, 2018

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment