IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**February 27, 2024**
C. CASEY FORBES, CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**DUSTI A.,**
**Petitioner Below, Petitioner**

**v.) No. 23-ICA-125**    (Fam. Ct. Randolph Cnty. No. FC-42-2017-D-37)

**JONATHAN A.,**
**Respondent Below, Respondent**

## MEMORANDUM DECISION

Petitioner Dusti A.[1] ("Mother") appeals the Family Court of Randolph County's February 13, 2023, and February 23, 2023, orders. In its February 13, 2023, order, the circuit court modified the custodial allocation of the parties' children, granted Jonathan A. ("Father") primary custody of the children, and ordered the Bureau for Child Support Enforcement ("BCSE") to calculate the amount of Mother's child support obligation. By supplemental order entered on February 23, 2023, Mother was ordered to pay monthly child support to Father. The guardian ad litem and the BCSE each filed responses in support of the family court's orders.[2]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds that there is error in the lower tribunal's decision but no substantial question of law. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure for reversal in a memorandum decision. For the reasons set forth below, the family court's decision is reversed, in part, vacated, in part, and remanded for further proceedings consistent with this decision.

The parties were divorced by a final divorce order entered on April 27, 2017, which incorporated their shared parenting plan. Two children, R.A. and M.A., were born of the

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See, e.g.,* W. Va. R. App. P. 40(e); *State v. Edward Charles L.,* 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] Dusti A. is self-represented. The guardian ad litem is Shannon R. Thomas, Esq. The BSCE is represented by Mark L. French, Esq.  Jonathan A. did not participate in this appeal.

marriage and were ages fifteen and ten, respectively, at the time of appeal. Initially, Mother was designated as the primary residential and custodial parent, and Father was given parenting time every other weekend and during the weekdays if the children were not at school and Mother was working. Father's child support obligation was $721.55 per month, but he instead voluntarily agreed to pay $400.00 every two weeks.

In September 2020, Father filed a domestic violence petition against Mother on behalf of R.A. On September 14, 2020, the family court appointed a guardian ad litem to investigate the domestic violence allegations and a hearing was scheduled for September 28, 2020. On the morning of September 28, 2020, Father filed a petition to modify the original parenting plan from the April 27, 2017, final divorce order. In his petition, Father claimed the children had been placed in his care due to Mother's various job changes and relocation to Clay County. He further alleged that the children were not safe with her and requested that the family court end child support and modify custody.

On September 28, 2020, the family court held a hearing on the domestic violence petition and subsequently dismissed the action, finding it did not meet the legal requirements. After dismissing the domestic violence petition, the court called the divorce action for a hearing on Father's petition for modification. After determining that Mother had not been served with Father's petition since it had only been filed hours earlier, the court, sua sponte, but with the guardian ad litem's consent, transitioned the hearing into an emergency hearing in the divorce case. The court granted emergency temporary relief to Father at the request of the guardian ad litem due to concerns with parenting issues presented and the need for further investigation. By temporary order entered on October 27, 2020, the family court modified the parties' parenting plan from April 27, 2017; Father was designated primary parent of the children and Mother was given parenting time twice a week for five hours at the home of a mutual third party. Additionally, Father's child support obligation was ordered to cease on October 1, 2020.

Over the next two years, the family court held several hearings and made several rulings in connection with Father's petition for modification. Mother was initially granted visitation twice a week for five hours, but these visits were later altered allowing her one visit with M.A. on October 2, 2021, and then visits with M.A. every other weekend from Friday to Sunday conditioned on the success of the October 2, 2021, visit. In an effort to resolve their remaining issues, the court ordered mediation[3] prior to the final hearing, which

---

[3] Although the parties appeared to reach an agreement at mediation, Mother withdrew her consent prior to the family court's adoption of the agreement, as discussed in more detail below.

was scheduled for June 8, 2022.[4] The court held a hearing on September 13, 2022, where Father was found in contempt for failing to pay mediation fees. The court set a final hearing for December 5, 2022, and ordered the parties to file exhibits and witness lists ten days prior to the final hearing. Mother attempted to file her exhibits and witness list; however, her filings were refused by the circuit clerk, and she was instructed to submit her filings during the final hearing.[5]

The final hearing was held on December 5, 2022. During the hearing, the family court was made aware of the circuit clerk's refusal to accept and file Mother's witness list and exhibits. Mother testified that when her filings were refused, the circuit clerk called the family court and was reassured that she could present her documents at the final hearing. However, the family court did not permit Mother to present her evidence in bulk and, instead, instructed her to explain each document to the court for admittance. Apparently frustrated with that procedure, Mother withdrew her request to admit her exhibits in bulk but did submit some of the exhibits in support of her argument.

During the final hearing, Mother informed the family court that she no longer agreed to the mediated parenting plan and felt that she was coerced into the agreement by the mediator. The court found that Mother was not coerced or pressured into the agreement and noted that she had also backed out of a previous mediation agreement; nonetheless, the court proceeded with the hearing. At the conclusion of the hearing, the court adopted the parties' mediated parenting plan agreement and ordered the BCSE to calculate and file Mother's child support obligation.[6] Thus, the court granted Father's petition for modification and awarded him primary custodial allocation of the children. Mother was awarded parenting time with M.A. every other weekend and her parenting time with R.A. was conditioned on the approval of the child's counselor.[7] The court ordered the guardian

---

[4] The record on appeal is devoid of any indication of what happened at the June 8th hearing.

[5] During the final hearing, the guardian ad litem indicated that the circuit clerk's refusal of Mother's filings was due to the circuit clerk's uncertainty of how to operate the recent implementation of the e-filing system.

[6] The family court had no financial documentation from the parties and no evidence regarding the parties' finances was presented.

[7] The family court found that Mother would also be awarded parenting time with R.A. every other weekend if the child's counselor tendered written approval to the court and the parties.

3

ad litem to prepare and submit the final order to the court within ten days pursuant to Rule 22(b) of the Rules of Practice and Procedure for Family Court.[8]

On February 1, 2023, the family court entered a contempt notice against the guardian ad litem for failing to submit the final order from the December 5, 2022, hearing. The court scheduled a show cause hearing on the contempt issue for February 6, 2023. However, the contempt hearing was cancelled because the guardian ad litem presented the final order to the court prior to the hearing.

By final order entered on February 13, 2023, the family court granted Father's petition for modification of the April 27, 2017, divorce order by awarding him primary custody of the children, adopting the mediated parenting plan agreement, and ordering the BCSE to calculate Mother's child support obligation. On February 23, 2023, the court entered its supplemental order modifying child support. Mother was ordered to pay child support in the amount of $266.23 per month beginning December 1, 2022. It is from these orders that Mother now appeals.

When reviewing the order of a family court, we apply the following standard of review:

> "In reviewing . . . a final order of a family court judge, we review the findings of fact made by the family court judge under the clearly erroneous standard, and the application of law to the facts under an abuse of discretion standard. We review questions of law *de novo*." Syl., [in part,] *Carr v. Hancock*, 216 W. Va. 474, 607 S.E.2d 803 (2004).

*Amanda C. v. Christopher P.*, 248 W. Va. 130, 133, 887 S.E.2d 255, 258 (Ct. App. 2022); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court order).

On appeal, Mother raises three assignments of error. First, she argues that the family court erred by preventing her from presenting the entirety of her evidence due to the circuit clerk's refusal to file the same. We disagree. Although the circuit clerk did refuse to file Mother's exhibits, the record reflects that the court gave Mother multiple opportunities to present her exhibits individually during the final hearing. The court did not prohibit Mother from introducing her evidence; it was her own reluctance to proceed. Therefore, we find no error.

---

[8] Rule 22(b) of the Rules of Practice and Procedure for Family Court states, in-part, "[a]n attorney assigned to prepare an order or proposed findings shall deliver the order or findings to the court no later than ten days after the conclusion of the hearing giving rise to the order or findings."

Next, Mother contends that the family court erred by disallowing her to attend the show cause hearing regarding the guardian ad litem's failure to timely prepare the final order. Although this argument is a non-appealable issue, our review of the record indicates that the guardian ad litem purged herself from contempt by submitting the final order prior to the show cause hearing, obviating the need for such hearing. Accordingly, this argument lacks merit and is moot since no show cause hearing occurred.

Lastly, Mother argues that the family court erred by awarding Father child support because it was not addressed at the final hearing and the family court had no recent financial statements from either party. We agree. Although the record demonstrates that Father did not seek an award for child support in his petition for modification, West Virginia Code § 48-9-205 (2022)[9] requires courts to include a provision for the financial support of children when a permanent parenting plan is implemented.

In the case at issue, the family court did not take evidence regarding the parties' income. Rule 13 of the West Virginia Rules of Practice and Procedure for Family Court requires all parties to submit financial statements at least five days prior to any hearing that involves custodial allocation. It also states, "[i]f a party fails to file or untimely files any required financial information, the court may refuse to grant requested relief to that party, and/or may accept the financial information of the other party as accurate." W. Va. Fam. Ct. R. 13. Here, the family court chose to grant relief despite not hearing any evidence on the issue. In its response brief, the BCSE acknowledges that it was not given any financial documentation to calculate the parties' income and was not provided the opportunity to question the parties regarding their income during the final hearing. Additionally, the record below is devoid of any colloquy that could have assisted the BCSE in calculating the parties' income. Nonetheless, the BCSE acknowledged that it attempted to determine Father's income to the best of its ability,[10] and was obligated to attribute income to Mother since it was unable to ascertain the same.

West Virginia Code § 48-1-205(a) (2008) defines attributed income as "income not actually earned by a parent, but which may be attributed to the parent because he or she is unemployed, is not working full time, or is working below full earning capacity, or has nonperforming or underperforming assets." Subsection (b) of the statute outlines a three-

---

[9] West Virginia Code § 48-9-205(c)(4) states, "after consideration of the evidence, the court shall order a parenting plan . . . containing . . . [p]rovisions for the financial support of the child or children[.]"

[10] The BCSE's response brief indicates that it has access to various state and federal databases that assist in determining a party's income; however, these sources of information are not always updated timely and do not differentiate between types of income, such as overtime wages, which may affect its calculations.

5

part test for courts to evaluate whether attribution of income to a parent is appropriate. The statute states:

> If an obligor: (1) Voluntarily leaves employment or voluntarily alters his or her pattern of employment so as to be unemployed, underemployed, or employed below full earning capacity; (2) is able to work and is available for full-time work for which he or she is fitted by prior training or experience; and (3) is not seeking employment in the manner that a reasonably prudent person in his or her circumstances would do, then an alternative method for the court to determine gross income is to attribute to the person an earning capacity based on his or her previous income. . . .[i]n order for the court to consider attribution of income, it is not necessary for the court to find that the obligor's termination or alteration of employment was for the purpose of evading a support obligation.

W. Va. Code § 48-1-205(b). A family court *must* consider the three-part test in deciding whether to attribute income. *See Melinda H. v. William R.*, 230 W. Va. 731, 734-35, 742 S.E.2d 419, 422-23 (2013) (citing *Porter v. Bego*, 200 W.Va. 168, 176, 488 S.E.2d 443, 451 (1997)) (emphasis added).

In the instant case, we find that the family court erroneously attributed income to Mother without considering or evaluating any evidence regarding the same. Since the family court heard no evidence of the parties' income, it was unable to apply the facts to the three-part test articulated in West Virginia Code § 48-1-205(b) and recognized in *Porter*. Accordingly, we vacate and remand this issue to the family court with instructions to receive evidence regarding the parties' income. After considering the evidence, the family court shall then determine whether attribution of income is warranted and enter a new, appropriate child support order.

Additionally, Mother argues that the family court erred when it adopted the mediated parenting plan. We agree. The family court enforced the parties' mediated parenting plan agreement although Mother conspicuously withdrew her consent prior to the court adopting the plan. During the hearing, Mother informed the court that she felt coerced into the agreement, and no longer consented to such; she argued that she wanted primary custody of her children. The court disregarded Mother and instead found that Mother was not coerced and did consent to the mediated parenting plan. Our state's highest court has made the issue clear, as it has found:

> [p]ursuant to Rule 4[3](c) of the West Virginia Rules of Practice and Procedure for Family Court, either party is free to withdraw his or her consent to a mediated agreement prior to the adoption of that agreement by the family court. Barring bilateral consent, there is no basis for the family court to adopt a mediated agreement.

*Rader v. Fink*, No. 20-0889, 2022 WL 203035, at *3 (W. Va. Jan. 24, 2022) (memorandum decision) (citing Syl*., Mason v. Mason*, 216 W. Va. 328, 607 S.E.2d 434 (2004)).

The critical component of mutual assent in adopting a mediated agreement is addressed in Rule 43(c) of the Rules of Practice and Procedure for Family Court, which provides that a mediation agreement has no legal effect until it has been adopted by the court. The family court proceeded to enforce the mediated parenting plan when it was aware that the critical elements of mutual assent and voluntariness were not present. Therefore, the family court's adoption of the mediated parenting plan is hereby reversed.

If the parties are unable to agree on a parenting plan, the family court must then analyze whether there has been a substantial change in the circumstances.

The statute governing a modification of a parenting plan provides that:

[e]xcept as provided in § 48-9-402 or § 48-9-403 of this code, a court shall modify a parenting plan order if it finds, on the basis of facts that were not known or have arisen since the entry of the prior order and were not anticipated in the prior order, that a substantial change has occurred in the circumstances of the child or of one or both parents and a modification is necessary to serve the best interests of the child.

W. Va. Code § 48-9-401 (2022).

After finding a substantial change in circumstances has occurred or has been exempted, the family court must articulate if the modification is in the best interest of the children. West Virginia Code § 48-9-102a (2022) provides that it is rebuttably presumed "that equal (50-50) custodial allocation is in the best interest of the child." Additionally, it is essential that family courts adhere to West Virginia Code § 48-9-206(a) (2022) when hearing custody matters. Regarding the statute, we have previously held:

[t]his statute presumes equal (50-50) parenting time for both parents unless the parties agree otherwise. This presumption may be rebutted if the family court finds by a preponderance of the evidence that the arrangement would be harmful to the child, or a provision of West Virginia Code § 48-9-209(f) (2022) requires a different custodial allocation. West Virginia Code § 48-9-206(d) requires that a determination of custodial allocation in a final permanent parenting plan order be based on the presentation of evidence and include specific findings of fact and conclusions of law supporting the determination.

*Jonathon F. v. Rebekah L.,* 247 W. Va. 562, 563, 883 S.E.2d 290, 291 (Ct. App. 2023).

In the absence of an agreed parenting plan, the family court failed to properly apply the law governing the allocation of custodial responsibility. Specifically, the court failed to explain how Father rebutted the presumption of equal 50-50 custody by a preponderance of the evidence and failed to provide sufficient findings of fact and conclusions of law to support its deviation from the presumption when it awarded him primary custody of the children. This Court cannot emphasize how essential it is for family courts to not only articulate their findings, but also explain their reasons for making such findings. Therefore, we remand this issue to the family court with instructions to issue an order that properly provides sufficient findings of fact and conclusions of law to wholly justify its determination of custodial allocation.

For the foregoing reasons, the February 13, 2023, order of the Family Court of Randolph County is hereby converted to a temporary custodial allocation order, which shall remain in place until an order is issued containing sufficient findings of fact and conclusions of law consistent with this decision. The February 23, 2023, supplemental order regarding child support is hereby vacated until the family court receives evidence on the parties' income and determines whether attribution of income is proper.

Reversed, in part, Vacated, in part, and Remanded.

**ISSUED:** February 27, 2024

**CONCURRED IN BY:**

Chief Judge Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear